UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EMANUEL PRELDAKAJ, on behalf of himself and all others similarly situated, | Index No.: 20-cv-09433(VSB) |
| Plaintiff, | |
| v. | |
| THE MONARCH CONDOMINIUM, THE MONARCH CONDOMINUM BOARD OF MANAGERS and LASALA MANAGEMENT, INC. | |
| Defendants. | |

**THE PARTIES' JOINT MEMORANDUM OF LAW IN SUPPORT OF
(1) PRELIMINARY APPROVAL OF SETTLEMENT; (2) CONDITIONAL
CERTIFICATION OF THE PROPOSED SETTLEMENT CLASS; (3) APPOINTMENT
OF McLAUGHLIN & STERN, LLP AS CLASS COUNSEL; (4) APPROVAL OF THE
PROPOSED NOTICE OF SETTLEMENT; AND (5) SCHEDULING A FAIRNESS
HEARING FOR FINAL APPROVAL OF THE SETTLEMENT**

Brett R. Gallaway
Lee S. Shalov
Jason S. Giaimo
McLaughlin & Stern, LLP
260 Madison Avenue
New York, New York 10016
Tel: (212) 448-1100
Fax: (212) 448-0066

*Attorneys for Plaintiffs*

{N0332352.1}

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

FACTUAL AND PROCEDURAL BACKGROUND.......................................................... 2

SUMMARY OF THE SETTLEMENT TERMS ................................................................ 4

    A.  The Settlement Fund ........................................................................................... 4

    B.  Class Members .................................................................................................... 5

    C.  Releases.............................................................................................................. 5

    D.  Allocation Formula ............................................................................................ 6

    E.  Attorneys' Fees, Costs and Service Awards ...................................................... 6

CLASS ACTION SETTLEMENT PROCEDURE ............................................................ 7

PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE ................... 9

    A.  The Settlement Is Fair, Reasonable, and Adequate .......................................... 10

        1.  Litigation Through Trial Would Be Complex, Costly, and Long.............................. 11

        2.  The Court Cannot Assess the Reaction of the Class Until After Notice Issues.......... 12

        3.  Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly................................................................................................... 12

        4.  Plaintiff Would Face Risk if the Case Proceeded ...................................... 13

        5.  Establishing and Maintaining the Class Through Trial Presents Risk....................... 14

        6.  The Settling Entities Ability to Withstand a Greater Judgment Is Not Determinative................................................................................................. 14

        7.  The Settlement Fund Is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation........................................... 14

CONDITIONAL CERTIFICATION OF THE CLASS IS APPROPRIATE ..................... 15

    A.  Numerosity........................................................................................................ 16

    B.  Commonality..................................................................................................... 18

    C.  Typicality .......................................................................................................... 19

    D.  Adequacy of the Named Plaintiffs and Class Counsel .................................... 19

    E.  Certification Is Proper Under Rule 23(b)(3) ..................................................... 21

        1.  Common Questions Predominate ............................................................... 21

        2.  A Class Action Is a Superior Mechanism ................................................. 23

M&S SHOULD BE APPOINTED AS CLASS COUNSEL ............................................. 24

THE NOTICE PLAN AND AWARD DISTRIBUTION PROCESS ARE APPROPRIATE...... 24

CONCLUSION................................................................................................................ 26

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997) ................................................................................................ 21, 23

*Ballinger v. Advance Magazine Publishers, Inc.*,
    2014 U.S. Dist. LEXIS 179538 (S.D.N.Y. Dec. 29, 2014) ........................................ 13, 15, 23

*Berkson v. Gogo LLC*,
    147 F. Supp. 3d 123 (E.D.N.Y. 2015) ................................................................... 9, 10

*Brown v. City of Barre*,
    2010 WL 5141783 (D. Vt. Dec. 13, 2010) ............................................................ 17

*Bruce v. Christian*,
    113 F.R.D. 554 (S.D.N.Y. 1986) .......................................................................... 16

*City of Detroit v. Grinnell Corporation*,
    495 F.2d 448 (2d Cir. 1974) ................................................................... 10, 12, 13, 15

*Civil et al. v Starrett City, Inc., et al.*,
    Index No. 18-cv-2256 (E.D.N.Y) ......................................................................... 20

*Cnty. of Suffolk v. Long Island Lighting Co.*,
    710 F. Supp. 1422 (E.D.N.Y. 1989) ..................................................................... 15

*Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*,
    502 F.3d 91 (2d Cir. 2007) .................................................................................. 21

*Damassia v. Duane Reade, Inc.*,
    250 F.R.D 152 (S.D.N.Y. 2008) .......................................................................... 23

*Deangelis v. Bally's Park Place, Inc.*,
    298 F.R.D. 188 (D.N.J. 2014) ............................................................................. 22

*Denney v. Deutsche Bank AG*,
    443 F.3d 253 (2d Cir. 2006) ................................................................................ 19

*Dziennik v. Sealift, Inc.*,
    2007 U.S. Dist. LEXIS 38701 (E.D.N.Y. May 29, 2007) ........................................ 19

*Frank v. Eastman Kodak Co.*,
    228 F.R.D. 174 (W.D.N.Y. 2005) .................................................................. 15, 17, 19

*Gen. Tel. Co. of the SW. v. Falcon*,
    457 U.S. 147 (1982) .......................................................................................... 18

*Goldberger v. Integrated Res., Inc.*,
  209 F.3d 43 (2d Cir. 2000) ................................................................................. 10

*Gortat v. Capala Bros.*,
  949 F. Supp. 2d 374 (E.D.N.Y. 2013) ................................................................ 18

*Grant v. Sullivan*,
  131 F.R.D. 436 (M.D. Pa. 1990) ......................................................................... 17

*Green v. Wolf Corp.*,
  406 F.2d 291 (2d Cir. 1968) ................................................................................. 23

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
  2009 U.S. Dist. LEXIS 88404 (E.D.N.Y. Sept. 25, 2009) .................................. 10

*In re Am. Intern. Grp., Inc. Sec. Litig.*,
  689 F.3d 229 (2d Cir. 2012) ................................................................................. 21

*In re Austrian & German Bank Holocaust Litig.*,
  80 F. Supp. 2d 164 (S.D.N.Y. 2000) ...................................................... 12, 13, 14

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001) ................................................................................. 12

*In re Drexel Burnham Lambert Grp., Inc.*,
  960 F.2d 285 (2d Cir. 1992) ................................................................................. 19

*In re EVCI Career Coils. Holding Corp. Sec. Litig.*,
  2007 U.S. Dist. LEXIS 57918 (S.D.N.Y. July 27, 2007) .................................... 10

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
  55 F.3d 768 (3d Cir. 1995) ................................................................................... 16

*In re Ira Haupt & Co.*,
  304 F. Supp. 917 (S.D.N.Y. 1969) ...................................................................... 13

*In re Michael Milken & Assocs. Sec. Litig.*,
  150 F.R.D. 57 (S.D.N.Y. 1993) ........................................................................... 14

*In re Paine Webber Ltd. P'ships Litig.*,
  147 F.3d 132 (2d Cir. 1998) ................................................................................... 9

*In re Traffic Exec. Ass'n E.R.R.*,
  627 F.2d 631 (2d Cir. 1980) ................................................................................... 9

*In re Visa Check/MasterMoney Antitrust Litig.*,
  280 F.3d 124 (2d Cir. 2001) ................................................................................. 21

*In re Warfarin Sodium Antitrust Litig.,*
   391 F.3d 516 (3d Cir. 2004)..................................................................... 9, 12

*Jackson v. Foley,*
   156 F.R.D. 538 (E.D.N.Y.1994) ...................................................................... 17

*Jin v. Shanghai Original, Inc.,*
   990 F.3d 251 (2d Cir. 2021)............................................................................ 16

*Johnson v. Brennan,*
   2011 U.S. Dist. LEXIS 105775 (S.D.N.Y. Sept. 16, 2011)...................................... 9

*Karic v. Major Auto. Cos.,*
   2016 U.S. Dist. LEXIS 57782 (E.D.N.Y. Apr. 27, 2016) ................................. 11, 12

*Koss v. Wackenhut Corp.,*
   2009 WL 928087 (S.D.N.Y. Mar. 30, 2009) ........................................................ 16

*Lizondro-Garcia v. Kefi LLC,*
   300 F.R.D. 169 (S.D.N.Y. 2014) ........................................................... 9, 20, 23

*Ludwig v. Pret A Manger,*
   Index No.: 11-cv-5677 (S.D.N.Y.) ................................................................... 20

*Marisol A. v. Giuliani,*
   126 F.3d 372 (2d Cir. 1997)............................................................................ 19

*Marshall v. Deutsche Post DHL Express (USA) Inc.,*
   Index No.: 13-cv-1471 (S.D.N.Y.) ................................................................... 20

*McBean v. City of N.Y.,*
   228 F.R.D. 487 (S.D.N.Y. 2005) ..................................................................... 22

*Morales v Rochdale Village, Inc. et al.,*
   Index No. 15-cv-502 (E.D.N.Y) ...................................................................... 20

*Newman v. Stein,*
   464 F.2d 689 (2d Cir. 1972)............................................................................ 15

*Orellana v. One if By Land Restaurant LLC,*
   2020 WL 5768433 (S.D.N.Y. Sept. 27, 2020)...................................................... 17

*Perez v. Allstate Ins. Co.,*
   2014 U.S. Dist. LEXIS 130214 (E.D.N.Y. Sept. 16, 2014)..................................... 23

*Perez v. Isabella Geriatric Ctr.,*
   2016 U.S. Dist. LEXIS 136855 (S.D.N.Y. Sept. 30, 2016).................................... 18

*Puglisi v. TD Bank, N.A.*,
  2015 U.S. Dist. LEXIS 100668 (E.D.N.Y. July 30, 2015) ..................................................... 20

*Ramirez v. Riverbay Corp.*,
  39 F. Supp. 3d 354 (S.D.N.Y. 2014).......................................................................... 18, 20, 22

*Reyes v. Altamarea Grp., LLC*,
  2010 U.S. Dist. LEXIS 139132 (S.D.N.Y. Dec. 22, 2010) ................................................... 25

*Roach v. T.L. Cannon Corp.*,
  778 F.3d 401 (2d Cir. 2015)................................................................................................... 21

*Robidoux v. Celani*,
  987 F.2d 931 (2d Cir. 1993).................................................................................................... 17

*Sewell v. Bovis Lend Lease LMB, Inc.*,
  2012 U.S. Dist. LEXIS 53556 (S.D.N.Y. Apr. 16, 2012)...................................................... 13

*Siewharack v. Queens Long Island Medical Group, P.C.*,
  Index No.: 11-cv-3603 (E.D.N.Y.) ........................................................................................ 20

*Siler v. Landry's Seafood House – North Carolina, Inc.*,
  2014 WL 2945796 (S.D.N.Y. June 30, 2014) ....................................................................... 17

*Sykes v. Mel Harris & Assocs., LLC*,
  2016 U.S. Dist. LEXIS 74566 (S.D.N.Y. May 24, 2016)...................................................... 13

*Terrana v. JCPenney*,
  Index No.: 13-cv-0460 (S.D.N.Y.) ........................................................................................ 21

*Torres v. Gristede's Operating Corp.*,
  2010 U.S. Dist. LEXIS 75362 (S.D.N.Y. June 1, 2010).......................................................... 7

*Tyson Foods Inc. v. Bouaphakeo*,
  136 S. Ct. 1036 (2016)........................................................................................................... 21

*Varacallo v. Mass. Mut. Life Ins. Co.*,
  226 F.R.D. 207 (D.N.J. 2005)................................................................................................ 25

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
  396 F.3d 96 (2d Cir. 2005).................................................................................................. 9, 10

*Whitehorn v. Wolfgang's Steakhouse, Inc.*,
  275 F.R.D. 193 (S.D.N.Y. 2011) ........................................................................................... 22

**Statutes**

Fair Labor Standards Act of 1938 29 U.S.C. § 203 ............................................................... passim

Federal Rule of Civil Procedure 23 ..................................................................... passim

**Other Authorities**

Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*, §§ 11.22, *et seq.*
   (4th ed. 2002) .......................................................................................... 7, 9, 15

*Manual for Complex Litigation* (3d ed.) § 30 ............................................................ 10

## INTRODUCTION

This is a proposed wage-and-hour class and collective action brought by Plaintiff, Emanuel Preldakaj (the "Named Plaintiff"), on behalf of himself and other hourly paid and non-exempt employees at a residential high-rise building known as The Monarch Condominium.  Plaintiffs are pleased to present to the Court for preliminary approval a proposed settlement of the action in the amount of $912,500 (the "Settlement") reached by Plaintiff with The Monarch Condominium, The Monarch Condominium Board of Managers and LaSala Management, Inc. (collectively, the "Monarch Defendants" or the "Settling Entities").  In the estimation of Class Counsel, this sum represents more than half of all Class Members' compensatory damages if they were successful on all their claims at trial, a truly excellent result under the circumstances.

As demonstrated below, the proposed Settlement is fair, reasonable and adequate, and satisfies all the criteria for preliminary approval under applicable federal and state law. Accordingly, Plaintiff respectfully requests that the Court: (1) grant preliminary approval of the Settlement on the terms set forth in the Joint Stipulation of Settlement and Release (the "Agreement", which is attached as Exhibit 1 to the Declaration of Brett R.  Gallaway (the "Gallaway Decl."))[1]; (2) conditionally certify the proposed settlement class, for settlement purposes only, under Federal Rule of Civil Procedure 23(b)(3); (3) appoint McLaughlin & Stern, LLP ("M&S") as Class Counsel; (4) approve the proposed Notice of the Settlement attached as Exhibit 2 to the Gallaway Decl., and direct its distribution; and (5) schedule a fairness hearing for final approval of the Settlement.

---

[1]     Unless otherwise indicated, all capitalized terms and definitions used herein shall have the same meaning as set forth in the Agreement.

## FACTUAL AND PROCEDURAL BACKGROUND

On November 10, 2020, Named Plaintiff filed a 23-page class and collective action complaint (the "Complaint") against the Monarch Defendants in the United States District Court for the Southern District of New York, No.  20-cv-9433 (VSB), captioned *Preldakaj v. The Monarch Condominium, et al.* (the "Action").  In the Complaint, Named Plaintiff generally alleges that the Monarch Defendants owe him and other current and former non-supervisory, non-exempt building service staff members paid on an hourly basis who worked at The Monarch Condominium during the period from November 10, 2017, through the date of any Preliminary Approval Order issued in this matter (the "Class Members") unpaid straight and overtime compensation under the FLSA because the Monarch Defendants (i) pay Class Members according to their scheduled shifts even though employees are routinely asked to perform work on their days off or for several hours per day outside of the parameters of their regularly scheduled shift; (ii) require Class Members to clock in/out and work before and after their shifts and during meal breaks; (iii) have a policy of refusing to pay *any* overtime to Class Members despite when they perform work; (iv) offer Class Members "comp-time" in lieu of overtime compensation; (v) utilize a time- clock system that rounds employee time always to the Class Member's disadvantage; and (vi) direct supervisors to alter time reports to reduce the wages employees are paid.  Named Plaintiff further asserts Federal Rule 23 class claims for the same allegations against the Monarch Defendants under the wage and hour laws of New York.

After filing the Complaint, the parties agreed to stay the Action pending a mandatory mediation pursuant to Article XIX § 47 of the Class Members' collective bargaining agreement. *See* Dkt. Nos. 14-15.  This stay was granted until March 21, 2021 and Defendants did not respond

to the Complaint pending the outcome of the mediation.[2] *See id.*  In anticipation of the mediation, Class Counsel pushed forward aggressively with informal discovery.  In connection with these efforts, Class Counsel received and reviewed thousands of pages of documents from the Monarch Defendants, including collective bargaining agreements and Class Member time and payroll records.  Class Counsel also spoke with a number of Class Members regarding their work experiences at the Monarch Condominium and secured six detailed declarations from Class Members attesting to and supporting Named Plaintiff's allegations in the Complaint.  *See* Gallaway Decl., ¶ 6.  Moreover, Class Counsel analyzed and prepared a detailed individual damages analysis utilizing each Class Member's time and payroll records in the calculation of Class Member damages.  *See id.*

Contemporaneous with these efforts in informal discovery and damage analysis, and pursuant to the terms of the Collective Bargaining Agreement, Class Counsel and counsel for the Monarch Defendants participated in mandatory mediation to explore settlement of the claims asserted in the Complaint.  Robin Gise, Esq. (the "Mediator"), an experienced and well-respected employment wage-and-hour mediator, was selected as mediator in accordance with the mediation provisions of the Collective Bargaining Agreement.  Counsel thereafter submitted to the Mediator comprehensive mediation statements outlining the claims in the Litigation, the risks associated with those claims and the viability of the Monarch Defendants' defenses.  *See* Gallaway Decl., ¶ 7.

The first of three all-day mediation sessions was then held on March 24, 2021.  *See* Gallaway Decl., ¶ 8.  The Parties were not able to reach a resolution during the first mediation and scheduled a second all-day mediation which occurred on April 13, 2021.  *See id.*  In the interim,

---

[2]     This stay was further extended twice pending the Parties ongoing mediations.  *See* Dkt. Nos. 16-19.

Class Counsel was actively engaged with the Mediator to discuss updates and settlement strategy. Like the first mediation, the second mediation was also unsuccessful, but the Parties agreed to continue good faith negotiations during a third and final all-day mediation which took place on April 23, 2021. *See id.* Again, during this interval and thereafter, Class Counsel was actively engaged with the Mediator, Named Plaintiff and numerous Class Members, all of whom took active involvement in the mediation process. Despite three full-day mediations, the parties were still not able to reach a resolution during the April 23rd mediation and continued to negotiate with the assistance of the Mediator for several days thereafter and finally reached an agreement as to material terms of a settlement in the amount of $912,500 on April 30, 2021 after a mediator's proposal. In the estimation of Class Counsel, this sum represents more than half of Class Members' total compensatory damages, an outstanding result by any measure. *See id.*

Over the next several months, Counsel for all Parties negotiated the terms of the Agreement and its accompanying exhibits. These terms were highly contested and required numerous follow up sessions with Ms. Gise and extensions to submit the Agreement to the Court. *See* Gallaway Decl., ¶ 9.; *see also* Dkt. Nos. 25-30. That Agreement is now being submitted to the Court for preliminary approval.

## SUMMARY OF THE SETTLEMENT TERMS

### A.  The Settlement Fund

Under the Agreement, the Settling Entities have agreed to pay into a Qualified Settlement Fund the Gross Settlement Amount of $912,500.

From the Gross Settlement Amount will be deducted: (i) settlement administration fees, costs, and expenses, including but not limited to, the Settlement Claim Administrator's fees and costs, and costs of all notices; (ii) Court-approved attorneys' fees and costs for Class Counsel;

(iii) Court-approved Service Award to the Named Plaintiff; and (iv) a special reserve fund as described in Sections 1.49, 3.1(F) and 3.4(B)(2) of the Settlement Agreement.  The amount remaining after these deductions, called the Net Settlement Fund, will be distributed to eligible Class Members.  The employer's share of payroll taxes shall be paid by the Settling Entities in addition to the Gross Settlement Amount.

## B.  Class Members

The Litigation is being settled on behalf of approximately 30 Class Members, who consist of: (i) all FLSA Class Members (who are current and former non-supervisory, non-exempt hourly building service staff members who worked at The Monarch Condominium during the period from November 10, 2017, through the date of the Preliminary Approval Order (the "Preliminary Approval Date")); and (ii) Rule 23 Class Members (who are individuals employed in New York State and who worked as non-supervisory, non-exempt hourly paid building service staff members at The Monarch Condominium during the period from November 10, 2014, through the Preliminary Approval Date).

## C.  Releases

All Class Members who do not exclude themselves from the Settlement will release the Settling Entities and their related parties from all Released State Law Claims (which includes failure to pay minimum wage, failure to pay overtime, failure to pay for all hours worked, failure to provide meal and rest periods, failure to timely pay final wages, and/or failure to furnish accurate wage statements or other notices, and any and all claims for recovery of compensation, overtime pay, minimum wage, premium pay, interest, and/or penalties).  All Class Members who receive and cash Settlement Checks will release the Settling Entities and their related parties from all Released Federal Law Claims (which includes all claims for any type of relief under the FLSA).

**D.  <u>Allocation Formula</u>**

If and when the Settlement is approved, the Settling Entities shall produce Class Records for all Class Members.  The Class Records will include information concerning Class Members' time and payroll records from November 10, 2014 through May 31, 2021 indicating the number of weeks worked during the Relevant Time Frame for each Class Member.  Class Counsel will then calculate each Class Members' expected total Settlement Amount based on a pro rata allocation from the applicable number of workweeks per Class Member from the Gross Settlement Amount.  Each Class Member will be assigned an individual percentage amount of the Gross Settlement Amount based on their individual number of workweeks compared to the total amount of workweeks attributable to the entire Class.  Each Class Member's percentage amount of the Gross Settlement Amount shall be assigned to the Net Settlement Fund and in order to compute that Class Member's share of the Net Settlement Fund (an "Individual Settlement Amount").  For example, if there are 10,000 total workweeks amongst all Class Members and an individual Class Member is allocated 500 workweeks, that Class Member's percentage of the Net Settlement Fund is 5%, and the Net Settlement Fund is $600,000.00, then that Class Member's Individual Settlement Amount would be $30,000.00 (subject to the applicable tax withholdings).  A Class Member shall only be entitled to receive that Class Member's percentage of the Net Settlement Fund as calculated above.

**E.  <u>Attorneys' Fees, Costs and Service Awards</u>**

At the Fairness Hearing, Class Counsel will ask the Court for an award of attorneys' fees of no more than one-third of the Gross Settlement Amount for the work they performed, the risks they confronted and the result they achieved on behalf of the Class.  Class Counsel will also request reimbursement of their litigation costs and expenses to be paid from the Qualified Settlement Fund. In addition, the Named Plaintiff will apply for a $10,000 Service Award.

## CLASS ACTION SETTLEMENT PROCEDURE

Federal Rule 23's class action settlement procedure includes three distinct steps:

1.  Preliminary approval of the proposed settlement after submission to the Court of a written motion for preliminary approval;

2.  Dissemination of mailed and/or published notice of settlement to all affected class members; and

3.  A final settlement approval hearing at which class members may be heard regarding the settlement, and at which argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

*See* Fed. R. Civ. P. 23(e); *see also* Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* ("Newberg"), §§ 11.22, *et seq.* (4th ed. 2002); *see also Torres v. Gristede's Operating Corp.*, 2010 U.S. Dist. LEXIS 75362, *10 (S.D.N.Y. June 1, 2010).  This process safeguards class members' procedural due process rights and enables the Court to fulfill its role as the guardian of the class's interests.

With this motion, Named Plaintiffs request that the Court take the first step — granting preliminary approval of the Agreement, conditionally certifying the Rule 23 Class and the FLSA Class for settlement purposes only, approving the Parties' proposed Notice, and authorizing the Claims Administrator to send the proposed Notice to Class Members.

The Parties respectfully submit the following proposed schedule for final resolution of this matter for the Court's consideration and approval:

1.  Within 14 days after the Preliminary Approval Date, the Settling Entities will provide the Settlement Claims Administrator the following information, in electronic form, for all Class Members: name, last known addresses, email addresses, social security numbers, job titles, dates of employment and number of qualified workweeks during the Relevant Time Frame.

2.  Within 28 days after the Preliminary Approval Date, or as soon thereafter as practicable, the Settlement Claims Administrator will mail to all Class Members, via First-Class United States Mail, postage prepaid, the Notice.

3. Class Members who wish to object or opt out must do so within 30 days of the Mailing Date.

4. Within sixty (60) days after the Preliminary Approval Date, the Settling Entities shall deposit Three Hundred Four Thousand, One Hundred Sixty-Six and 66/100 Dollars ($304,166.66) into the QSF; within one hundred and eighty (180) days after the Preliminary Approval Date, the Settling Entities shall deposit Three Hundred Four Thousand, One Hundred Sixty-Six and 67/100 Dollars ($304,166.67) into the QSF; and within three hundred (300) days after the Preliminary Approval Date, the Settling Entities shall deposit Three Hundred Four Thousand, One Hundred Sixty-Six and 67/100 Dollars ($304,166.67) into the QSF. These amounts shall be refunded to the Settling Entities if there is no Final Approval Order.

5. A Fairness Hearing will be held as soon as is convenient for the Court after the end of the Opt-Out Period.

6. At the Fairness Hearing, the Parties shall request that the Court, among other things: (1) finally certify the Rule 23 Class and the FLSA Class for purposes of settlement only; (2) approve the Settlement and Agreement as fair, reasonable, adequate, and binding on all Class Members who have not timely opted out of the Settlement; (3) order the Settlement Claims Administrator to distribute Settlement Checks to the Authorized Claimants, including the Service Award, if any, to be paid to the Named Plaintiff as described in this Agreement; (4) order attorneys' fees and reimbursement of expenses to be paid from the Qualified Settlement Fund; (5) order the dismissal with prejudice of all Released Class Claims asserted in the Litigation, including the claims of all Class Members who did not opt-out; and (6) order entry of the Final Approval Order in accordance with this Agreement.

7. Assuming no appeals are taken, within 30 days after the Court issues the Final Approval Order, the Settlement Claims Administrator will mail the Settlement Checks and Service Awards in accordance with Section 3.1(C) of the Agreement ("Mailing Date").

8. Within 90 days after the Mailing Date, Class Members must endorse or deposit each Settlement Check ("Acceptance Period").

9. Within 10 Days after the end of the Acceptance Period, the Settlement Claims Administrator shall prepare a final list of all Class Members who timely negotiated their Settlement Checks, together with copies of the front and backside of the Settlement Checks (reflecting the Class Members' Consents to Join), and provide such information and documents to counsel for Plaintiffs and the Settling Entities;

10. Within 90 days after the end of the Acceptance Period: half the amount of the uncashed Settlement Checks will be redistributed by the Settlement Claims Administrator to all Opt-In Plaintiffs who properly cashed their checks during the Acceptance Period ("Paid Class Member") and the remaining half will be deposited into the Reserve Fund maintained by the Settlement Claims Administrator;

11.   July 1, 2023: release of remaining money in the Reserve Fund to the Court-approved *cy pres* charitable organization.

## PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE

The law favors compromise and settlement of class action suits.  *See Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005) (noting the "strong judicial policy in favor of settlements, particularly in the class action context") (quoting *In re Paine Webber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998)); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("there is an overriding public interest in settling class action litigation, and it should therefore be encouraged"); *see also Johnson v. Brennan*, 2011 U.S. Dist. LEXIS 105775, *36 (S.D.N.Y. Sept. 16, 2011) ("[i]f the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement.").

"Preliminary approval . . . requires only an initial evaluation of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties." *Lizondro-Garcia v. Kefi LLC*, 300 F.R.D. 169, 179 (S.D.N.Y. 2014) (internal citation and quotation marks omitted); *see also Berkson v. Gogo LLC*, 147 F. Supp. 3d 123, 130 (E.D.N.Y. 2015) ("'[p]reliminary approval of a proposed settlement is appropriate where it is the result of serious, informed, non-collusive (arm's length) negotiations, where there are no grounds to doubt its fairness and no other obvious deficiencies . . . and where the settlement appears to fall within the range of possible approval.'").  To grant preliminary approval, the Court need only find that there is "probable cause to submit the [settlement] proposal to class members and hold a full-scale hearing as to its fairness."  *In re Traffic Exec. Ass'n E.R.R.*, 627 F.2d 631, 634 (2d Cir. 1980) (internal quotation marks omitted); *see also Newberg* § 11.25 ("if the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness . . . and appears to fall

within the range of possible approval," the  court should permit notice of the settlement to be sent to class members) (quoting *Manual for Complex Litigation* (3d ed.) § 30.41)).

To determine "whether a class settlement is fair, a district court examines (1) the negotiations that led up to the settlement, and (2) the substantive terms of the settlement." *Berkson*, 147 F. Supp. 3d at 13 (quoting *In re Air Cargo Shipping Servs. Antitrust Litig.*, 2009 U.S. Dist. LEXIS 88404, *64-65 (E.D.N.Y. Sept. 25, 2009)).  "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery."  *Wal-Mart Stores*, 396 F.3d at 116 (quoting *Manual for Complex Litigation* (3d ed.) § 30.42) (internal quotation marks omitted).  If the settlement was achieved through arm's-length negotiations involving experienced counsel, "[a]bsent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement."  *In re EVCI Career Coils. Holding Corp. Sec. Litig.*, 2007 U.S. Dist. LEXIS 57918, *12 (S.D.N.Y. July 27, 2007).

Preliminary approval is the first step in the settlement process.  It simply allows notice to issue and for Class Members to object to or opt out of the settlement.  After notice issues, the Court will be able to evaluate the settlement with the benefit of Class Members' input.

A. <u>**The Settlement Is Fair, Reasonable, and Adequate**</u>

In evaluating a class action settlement, courts in the Second Circuit generally consider the nine factors set forth in *City of Detroit v. Grinnell Corporation*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000) ("*Grinnell*").  The *Grinnell* factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the

defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Id.* Here, all of the *Grinnell* factors either weigh in favor of approval of the Agreement or are neutral.

### 1. **Litigation Through Trial Would Be Complex, Costly, and Long**

By reaching a settlement prior to dispositive motions or trial, Named Plaintiff seeks to avoid significant expense and delay, and instead ensure recovery for the Class Members. "[C]lass actions, especially in the context of FLSA claims, are inherently complex." *Karic v. Major Auto. Cos.*, 2016 U.S. Dist. LEXIS 57782, *16-17 (E.D.N.Y. Apr. 27, 2016) (noting that further litigation "would clearly cause additional expense and delay"). This case is no exception, with approximately 22 Class Members and claims under federal and New York law. Initially, the Monarch Defendants dispute the viability of the Named Plaintiff and Class Members' claims, and may assert (among other things) that the Named Plaintiff's claims must be submitted to arbitration. The Named Plaintiffs believe that they can defeat any future motion from the Monarch Defendants. Assuming the continuation of the litigation in the normal course, additional and extensive discovery would then be required to establish liability and damages and to support Named Plaintiff's collective and class certification motion and the Monarch Defendants' opposition to such motion. This discovery would include further electronic and paper discovery of the Settling Entities' policies, job descriptions, and schedules; depositions of Class Members and the Settling Entities' employees, such as the applicable Class Members' supervisors; and depositions of the Settling Entities' corporate representatives. After completing discovery, the Parties would likely move for summary judgment on the merits of the claims. If the Court were to determine that factual disputes precluded summary judgment, a fact-intensive trial would be necessary. Any judgment would likely be appealed, further extending the Litigation. This Settlement, on the other

hand, provides significant relief to Class Members in a prompt and efficient manner.  Therefore, the first *Grinnell* factor weighs in favor of preliminary approval.

### 2.   The Court Cannot Assess the Reaction of the Class Until After Notice Issues

Because Class Members have not been notified of the Settlement at this stage, the Court will be in a better position to more fully analyze this factor after the Notice is disseminated and Class Members have had an opportunity to opt out or object to the Settlement.  Thus, this factor is neutral and does not preclude the Court from granting preliminary approval.

### 3.   Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly

The Parties have completed enough discovery to recommend settlement.  The proper question is "whether counsel had an adequate appreciation of the merits of the case before negotiating."  *In re Warfarin*, 391 F.3d at 537 (quoting *In re Cendant Corp. Litig.*, 264 F.3d 201, 235 (3d Cir. 2001)); *see also In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 176 (S.D.N.Y. 2000) ("the pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement;" rather, they must be "an aggressive effort to ferret out facts helpful to the prosecution of the suit"); *Karic*, 2016 U.S. Dist. LEXIS 57782 at *19 ("[w]hen discovery has been extensive, and counsel has sufficient information to appreciate the merits of the case, then settlement is favored").

As discussed above, Class Counsel received and reviewed thousands of pages of documents from the Settling Entities.  These documents included collective bargaining agreements and Class Member time and payroll records.  Class Counsel also spoke with a number of Class Members and obtained six declarations regarding their work experiences at The Monarch Condominium and the manner in which they were harmed by virtue of the timekeeping policies challenged in the Litigation.  Class Counsel also worked extensively in the analyzing the Monarch

Defendants' time and payroll records to calculate Class Member damages.  *See* Gallaway Decl., ¶ 6.  Accordingly, the third *Grinnell* factor favors preliminary approval.  *See, e.g.*, *Ballinger v. Advance Magazine Publishers, Inc.*, 2014 U.S. Dist. LEXIS 179538, *4-5 (S.D.N.Y. Dec. 29, 2014) (granting preliminary approval where case was "settled before depositions were conducted . . . [but] both sides were well acquainted with the facts and the nature of the various internships at issue").

### 4. <u>Plaintiff Would Face Risk if the Case Proceeded</u>

Although Plaintiff believes his case is strong, it is subject to risk.  "[R]isks are inherent in litigation."  *Sewell v. Bovis Lend Lease LMB, Inc.*, 2012 U.S. Dist. LEXIS 53556, *23 (S.D.N.Y. Apr. 16, 2012).  Indeed, "[i]f settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome."  *In re Ira Haupt & Co.*, 304 F. Supp. 917, 934 (S.D.N.Y. 1969).  In weighing the risks of establishing liability and damages, the court "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement."  *Sykes v. Mel Harris & Assocs., LLC*, 2016 U.S. Dist. LEXIS 74566, *38 (S.D.N.Y. May 24, 2016) (quoting *In re Austrian,* 80 F. Supp. 2d at 177).

Here, a trial on the merits would involve significant risk as to both liability and damages. While Named Plaintiff believes he could ultimately defeat the Monarch Defendants' defenses and establish liability, this would require significant factual development and favorable outcomes at trial and on appeal, all of which are inherently uncertain and lengthy.  Named Plaintiff would have to prevail on his opposition to any contemplated motion to compel arbitration; rebut the merits of the Monarch Defendants' arguments that Class Members were not actually working during pre- and post-shift periods; litigate whether the Monarch Defendants' alleged violations were willful; and rebut the Monarch Defendants' arguments regarding the proper measure of damages.  The

proposed Settlement alleviates this uncertainty.  This factor also weighs in favor of preliminary approval.

### 5.  **Establishing and Maintaining the Class Through Trial Presents Risk**

The risk of obtaining class certification and maintaining it through trial also is present in this case.  The Settling Entities would likely contest collective and class certification resulting in extensive discovery and briefing.  If the Court authorized notice to FLSA Class Members, the Settling Entities would likely challenge that decision and seek to decertify the collective at a later date.  If the Court were to grant class certification of the New York State Law claims under Federal Rule 23, the Settling Entities also would likely challenge that determination, requiring additional briefing and a possible application to the Second Circuit under Federal Rule 23(f).  In addition, the Settling Entities may have different defenses for certain Class Members based on their particular factual circumstances.  Although time-rounding/off-the-clock cases such as this one are routinely certified, there is nonetheless a legitimate risk that the Court would conclude that such individualized factual inquiries preclude class treatment in this case.

### 6.  **The Settling Entities Ability to Withstand a Greater Judgment Is Not Determinative**

A "defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair."  *In re Austrian*, 80 F. Supp. 2d at n.9.  Here, the Settlement eliminates the risk of collection by requiring the Settling Entities to pay the full Settlement Amount within ten (10) days after the Preliminary Approval Date.  Accordingly, this factor is neutral.

### 7.  **The Settlement Fund Is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation**

The determination of whether a settlement amount is reasonable "is not susceptible of a mathematical equation yielding a particularized sum." *In re Austrian*, 80 F. Supp. 2d at 178 (quoting *In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57, 66 (S.D.N.Y. 1993)); *see also*

*Ballinger*, 2014 U.S. Dist. LEXIS 179538 at *7 ("[t]he inquiry with respect to this factor is to see whether the settlement falls below the lowest point in the range of reasonableness") (internal quotation marks and citation omitted). "Instead, there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (quoting *Newman v. Stein,* 464 F.2d 689, 693 (2d Cir. 1972)) (internal quotation marks omitted). "There is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Grinnell*, 495 F.2d at n.2.

Here, the Settlement provides more than "a fraction of the potential recovery." *Id.* at 455. To the contrary, the $912,500 Gross Settlement Amount provides a substantial, all-cash recovery to compensate Class Members for their damages even after deducting the attorneys' fees and expenses requested by Class Counsel. This is an extraordinary result by any measure and favors preliminary approval of the Settlement.

## CONDITIONAL CERTIFICATION OF THE CLASS IS APPROPRIATE

For settlement purposes, Named Plaintiff seeks to certify a class under Federal Rule of Civil Procedure 23(e). As discussed below, in the context of settlement and for purposes of settlement only, the Settlement class meets all the requirements for class certification, and the Settling Entities do not oppose certification for settlement purposes only. *See Cnty. of Suffolk v. Long Island Lighting Co.*, 710 F. Supp. 1422, 1424 (E.D.N.Y. 1989) ("[i]t is appropriate for the parties to a class action suit to negotiate a proposed settlement of the action prior to certification of the class"), *aff'd in part, rev 'd* in part *on other grounds*, 907 F.2d 1295 (2d Cir. 1990); *Newberg* § 11.27 ("[w]hen the court has not yet entered a formal order determining that the action may be

maintained as a class action, the parties may stipulate that it be maintained as a class action for the purpose of settlement only.").

Settlement class certification and appointment of class counsel have several practical purposes, including avoiding the costs of litigating class status while facilitating a global settlement, ensuring notification of the terms of the settlement, and setting the date and time of the final approval hearing. *See In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 790-92 (3d Cir. 1995) (noting the practical purposes of provisionally certifying settlement class). Under Federal Rule 23, a class action may be maintained if all the prongs of Rule 23(a), as well as one of the prongs of Rule 23(b), are met. Rule 23(a) requires that:

1.   the class is so numerous that joinder of all members is impracticable;

2.   there are questions of law or fact common to the class;

3.   the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

4.   the representative parties will fairly and adequately protect the interests of the class.

Rule 23(b)(3) requires the court to find that:

> [Q]uestions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

## A.  Numerosity

While numerosity is presumed at a level of 40 members, "there is no magic number of class members needed to satisfy numerosity". *Jin v. Shanghai Original, Inc.*, 990 F.3d 251, 263 (2d Cir. 2021); *see also Bruce v. Christian*, 113 F.R.D. 554, 557 (S.D.N.Y. 1986) (numerosity found even though the plaintiffs could identify only 16 class members); *Koss v. Wackenhut Corp.*, 2009 WL 928087 at *3 (S.D.N.Y. Mar. 30, 2009) (holding that each of plaintiffs' proposed classes, including a proposed class of less than 40 members, satisfied the numerosity requirement);

*Orellana v. One if By Land Restaurant LLC*, 2020 WL 5768433, at *6 (S.D.N.Y. Sept. 27, 2020) (holding that numerosity was met despite the absence of "clear evidence that the putative class is at least forty members large" since it was "clear that a collective action would be more practicable and cost-effective than having each individual plaintiff bring suit, since the individual damages sustained by the putative class members appears to be small and it would be impracticable for any one class member to bring a standalone suit"); *Siler v. Landry's Seafood House – North Carolina, Inc.*, 2014 WL 2945796, at *2 (S.D.N.Y. June 30, 2014) (holding that numerosity was met where there were 24 class members); *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 181-82 (W.D.N.Y. 2005) (approving class settlement and finding numerosity satisfied where there were 28 class members with small individual claims for damages); *Grant v. Sullivan*, 131 F.R.D. 436, 446 (M.D. Pa. 1990) (noting that the court "may certify a class even if it is composed of as few as 14 members"); *Brown v. City of Barre*, 2010 WL 5141783, at *4-5 (D. Vt. Dec. 13, 2010) (approving a class where only two members were identified but a reasonable estimate of actual class members was 20).

In deciding numerosity, particularly in cases falling into the gray area between 21 and 40 class members, courts must consider factors other than class size. *See Jackson v. Foley,* 156 F.R.D. 538, 542 (E.D.N.Y.1994). These factors include: (1) the judicial economy that will arise from avoiding multiple actions; (2) the geographic dispersion of members of the proposed class; (3) the financial resources of those members; (4) the ability of the members to file individual suits; and (5) requests for prospective relief that may have an effect on future class members. *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993) . Here, joinder is impracticable because the proposed Class is comprised of approximately 30 Class Members, many of whom are Albanian immigrants, for whom English is not their primary language or are otherwise unsophisticated low-income

employees who are geographically dispersed and do not know they have claims because of Defendants' ongoing violations of the FLSA and NYLL.  *See* Fed. R. Civ. P. 23(a)(l); *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993) ("practicability depends on all the circumstances surrounding a case, not on mere numbers."); *see also Gortat v. Capala Bros.*, 949 F. Supp. 2d 374, 383–84 (E.D.N.Y. 2013) (class of 24 members satisfies numerosity because: "the class members are immigrant laborers who speak little English,"… (2) "[t]hese individuals lack not only the financial resources to individually bring actions in federal court but also the incentive to do so in light of the relatively small recoveries many of them [were] reasonabl[y] expect[ed] to receive" and (3) "[j]udicial economy also continues to counsel against decertification".)

**B.  Commonality**

The proposed Class also satisfies the commonality requirement, the purpose of which is to test "whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."  *Gen. Tel. Co. of the SW. v. Falcon*, 457 U.S. 147, n. 13 (1982).  Here, Named Plaintiff and Class Members all share the common contentions that they were subject to an improper timekeeping policy that paid them according to their shifts, not the times they were actually working and for time spent working off the clock.  These common factual and legal questions are sufficient to satisfy commonality under Federal Rule 23(a)(2).  *See, e.g.*, *Ramirez v. Riverbay Corp.*, 39 F. Supp. 3d 354, 363 (S.D.N.Y. 2014) (finding commonality where "the establishment of the alleged RiverBay-wide schedule-based pay policy would carry the litigation of the claims at issue in Subclass 1 a significant step toward its resolution"); *Perez v. Isabella Geriatric Ctr.*, 2016 U.S. Dist. LEXIS 136855, *7 (S.D.N.Y. Sept. 30, 2016) ("[t]he common questions that are likely to drive the resolution of the litigation are whether the confluence of these policies [including a schedule-based time policy] . .

. can establish on a classwide basis, that: (1) Plaintiffs performed uncompensated work and (2) Isabella had knowledge or constructive knowledge of that work.").

## C.  **Typicality**

Federal Rule 23 requires that the claims of the representative party be typical of the claims of the class.  "Like the commonality requirement, typicality does not require the representative party's claims to be identical to those of all class members." *Frank*, 228 F.R.D. at 182.  Typicality is often satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) (quoting *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)).

Here, Named Plaintiff and each of the Class Members worked for the Monarch Condominium; allege the same injury (improper time-rounding and off-the-clock work); and seek the same relief (unpaid straight and overtime wages).  Thus, the Named Plaintiff and Class Members suffered the same or similar injuries and rely on the same legal theories in seeking relief. In this circumstance, the typicality requirement is satisfied.

## D.  **Adequacy of the Named Plaintiffs and Class Counsel**

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  The adequacy requirement exists to ensure that the named representatives will "have an interest in vigorously pursuing the claims of the class, and . . . have no interests antagonistic to the interests of other class members." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006).  "[O]nly a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status." *Dziennik v. Sealift, Inc.*, 2007 U.S. Dist. LEXIS 38701, *19 (E.D.N.Y. May 29, 2007).

Named Plaintiff does not have interests that are antagonistic to or at odds with the Class Members' interests. *See Lizondro-Garcia*, 300 F.R.D. at 176 (adequacy satisfied where, *inter alia,* there was no evidence that named plaintiffs' and class members' interests were at odds); *Puglisi v. TD Bank, N.A.*, 2015 U.S. Dist. LEXIS 100668, *3-4 (E.D.N.Y. July 30, 2015) (same). Moreover, Named Plaintiff has selected Class Counsel capable of adequately representing the Class's interests. *See, e.g.*, *Civil et al. v Starrett City, Inc., et al.*, Index No. 18-cv-2256 (E.D.N.Y) (M&S appointed lead counsel and obtained a $4.75 million settlement as counsel for over 950 employees at a similar cooperative housing development who were not compensated for work performed before and after scheduled shifts); *Morales v Rochdale Village, Inc. et al.*, Index No. 15-cv-502 (E.D.N.Y) (M&S appointed lead counsel and obtained a $2.65 million settlement as counsel for over 1,500 employees at a similar cooperative housing development who were not compensated for work performed before and after scheduled shifts); *Ramirez v. Riverbay Corp.*, Index No.: 13-cv-2367 (S.D.N.Y.) (M&S appointed Co-lead counsel and obtained a $6.25 million settlement as counsel for over 1,700 employees at a similar cooperative housing development who were not compensated for work performed before and after scheduled shifts and wrongfully paid compensatory time rather than overtime cash payments); *Siewharack v. Queens Long Island Medical Group, P.C.*, Index No.: 11-cv-3603 (E.D.N.Y.) (M&S appointed Co-lead counsel and obtained $2.45 million settlement for employees of medical company who were not compensated for time worked); *Ludwig v. Pret A Manger*, Index No.: 11-cv-5677 (S.D.N.Y.) (M&S appointed Co-lead and obtained $299,000 settlement for misclassified managers-in-training); *Marshall v. Deutsche Post DHL Express (USA) Inc.*, Index No.: 13-cv-1471 (S.D.N.Y.) (M&S appointed Lead Counsel and obtained a $1.5 million settlement as class counsel in a wage and hour class action on behalf of DHL clearance agents in New York, California and Florida); and *Terrana v.*

*JCPenney*, Index No.: 13-cv-0460 (S.D.N.Y.) (M&S appointed Co-lead counsel and obtained a $750,000 settlement in a wage and hour class action on behalf of non-exempt hourly employees of JCPenney in New York).  Thus, for the purposes of settlement, the adequacy requirement is satisfied.

### E.   Certification Is Proper Under Rule 23(b)(3)

Rule 23(b)(3) requires that the common questions of law or fact "predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  This inquiry examines "whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Tyson Foods Inc. v. Bouaphakeo*, 136 S. Ct. 1036 (2016) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)).  For the purposes of settlement, these requirements are met in this case.

#### 1.   Common Questions Predominate

The predominance requirement is more demanding than the Rule 23(a) commonality inquiry and "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *In re Am. Intern. Grp., Inc. Sec. Litig.*, 689 F.3d 229, 239 (2d Cir. 2012) (internal quotation marks and citations omitted).  To establish predominance, Plaintiff must demonstrate that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof."  *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 107-08 (2d Cir. 2007) (internal quotation omitted).  The essential inquiry is whether "liability can be determined on a class-wide basis, even when there are some individualized damage issues."  *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 139 (2d Cir. 2001); *see also Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015) (individualized damages are merely a factor that

courts "consider in deciding whether issues susceptible to generalized proof outweigh individual issues[,]" not an absolute bar to class certification) (internal quotation marks and citation omitted). Where plaintiffs are "unified by a common legal theory . . . and by common facts[,]" the predominance requirement is satisfied. *See McBean v. City of N.Y.*, 228 F.R.D. 487, 502 (S.D.N.Y. 2005).

Here, the predominating focus of the Litigation at trial will be on the Settling Entities' timekeeping policies; the impact of those policies on Class Members; and management's knowledge whether Class Members were working before and after shifts without pay. A number of courts have found predominance in virtually identical circumstances. *See, e.g., Deangelis v. Bally's Park Place, Inc.*, 298 F.R.D. 188, 192 (D.N.J. 2014) (finding predominance because "all of the present class members are similarly situated" and "the class is impacted uniformly by Defendant's failure to pay for the time spent prior to their scheduled shifts"); *Ramirez v. Riverbay Corp.*, 39 F. Supp. 3d 354, 369 (S.D.N.Y. 2014) ("the record suggests that if the plaintiffs succeed in demonstrating a corporate policy of routinely denying RiverBay employees compensation for pre- and post-shift work, the primary hurdle to recovery is likely to consist predominantly of arithmetical calculations based on payroll records and other documentary evidence"); and *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 275 F.R.D. 193, 200 (S.D.N.Y. 2011) ("[a]lthough individualized determinations must be made as to the amount of wages, overtime, and spread of hours pay each Plaintiff is due based on the hours projected for their shift and the number of hours worked, 'common legal issues related to the members' entitlement to overtime wages and the proper measure of such wages clearly predominate over these relatively simple, mechanical calculations.'").

## 2.  A Class Action Is a Superior Mechanism

The second part of the Rule 23(b)(3) analysis examines whether "the class action device [is] superior to other methods available for a fair and efficient adjudication of the controversy." *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968).  The superiority analysis considers four factors: (1) individual interest of class members in controlling prosecution of the action; (2) the extent of similar, prior litigation commenced by members of the class; (3) the desirability of concentrating the litigation in a particular forum; and (4) the difficulties of managing the class action.  *See* Fed. R. Civ. P. 23(b)(3).  Here, potential recovery for many Class Members, especially those who worked for the Monarch Condominium for only a limited period of time, is comparatively modest.  Additionally, for the limited purpose of settlement only, employing the class device to concentrate litigation in this Court will achieve economies of scale, will conserve the resources of the judicial system, and will avoid the waste and delay of repetitive proceedings and inconsistent adjudications of similar issues and claims.  *See, e.g.*, *Perez v. Allstate Ins. Co.*, 2014 U.S. Dist. LEXIS 130214, *67 (E.D.N.Y. Sept. 16, 2014) ("a class action will save an enormous amount in litigation costs for all parties and allow them to more efficiently prosecute their claims and defenses"); *Lizondro-Garcia*, 300 F.R.D. at 177 (class action more economical "due to plaintiffs' limited financial resources and the relatively modest size of any individual's recovery"); *Ballinger*, 2014 U.S. Dist. LEXIS 179538 at *14-15 (same); *Damassia v. Duane Reade, Inc.*, 250 F.R.D 152, 161 (S.D.N.Y. 2008) ("class action is superior . . . because it allows for a more cost-efficient and fair litigation of common dispute.").  Finally, "manageability" need not be considered in deciding whether to certify a class for settlement purposes only, as the litigation would not proceed on the basis of the certified settlement class if settlement is unsuccessful.  *See Amchem*, 521 U.S. at 620 ("[c]onfronted with a request for settlement-only class

certification, a district court need not inquire whether the case, if tried, would present intractable management problems.").

## M&S SHOULD BE APPOINTED AS CLASS COUNSEL

Federal Rule 23(g), which governs the standards and framework for appointing class counsel for a certified class, sets forth four criteria the district court must consider in evaluating the adequacy of proposed counsel: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class. *See* Fed. R. Civ. P. 23(g)(l)(A). The Court may also "consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class[.]" Fed. R. Civ. P. 23(g)(l)(B). The Advisory Committee has noted that "[n]o single factor should necessarily be determinative in a given case." Fed. R. Civ. P. 23(g) advisory committee's note.

M&S satisfies these criteria. The firm has done substantial work identifying, investigating, prosecuting, negotiating, and settling Named Plaintiff's and Class Members' claims. It has substantial experience prosecuting and settling employment class actions, including wage and hour class actions. Further, courts have repeatedly found M&S to be adequate class counsel in wage and hour class actions such as this. *See* Gallaway Decl., ¶¶ 2-3. Accordingly, M&S respectfully requests that it be appointed counsel for the Class pursuant to Federal Rule 23(g).

## THE NOTICE PLAN AND AWARD<br>DISTRIBUTION PROCESS ARE APPROPRIATE

Pursuant to Rule 23(c)(2)(B), the Notice must provide:

> the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must clearly and concisely state in plain, easily understood language:

(i)     the nature of the action;

(ii)    the definition of the class certified;

(iii)   the class claims, issues, or defenses;

(iv)    that a class member may enter an appearance through an attorney if the member so desires;

(v)     that the court will exclude from the class any member who requests exclusion;

(vi)    the time and manner for requesting exclusion; and

(vii)   the binding effect of a class judgment on members under Rule 23(c)(3).

The Notice satisfies each of these requirements. The Notice is written in plain English and is organized and formatted so as to be as clear as possible. The Notice will also be translated into Albanian, the language most commonly spoken by the Class Members. It is based on the model notice forms provided by the Federal Judicial Center ("FJC") on its website (www.fjc.gov). *See Reyes v. Altamarea Grp., LLC*, 2010 U.S. Dist. LEXIS 139132, *4-6 (S.D.N.Y. Dec. 22, 2010) (approving FLSA collective action notice based on FJC model); *Varacallo v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 207, 224-26 (D.N.J. 2005) (same regarding class settlement notice). Additionally, the Notice describes the terms of the Settlement, informs the Class Members about the allocation of attorneys' fees and costs, and provides specific information regarding the date, time, and place of the final approval hearing and Class Members' ability to exclude themselves from the settlement. *See* Gallaway Decl., Ex. 2.

The Settlement Agreement provides that the Settlement Claims Administrator will mail the Court-approved Notice, via First Class United States Mail, within 28 days of the entry of the Preliminary Approval Order. The Settlement Claims Administrator will take reasonable steps to obtain the correct addresses of any Class Member whose Claim Form is returned as undeliverable and will attempt a re-mailing.

## <u>CONCLUSION</u>

For the reasons set forth above, Named Plaintiff respectfully requests that the Court grant

the Motion for Preliminary Approval of Settlement and enter the Proposed Preliminary Order.

Dated: New York, New York
      July 12, 2021

                McLAUGHLIN & STERN, LLP

                By: _____
                    Brett R. Gallaway
                    Lee S. Shalov
                    Jason S. Giaimo
                260 Madison Avenue
                New York, New York 10016
                Tel.: (212) 448-1100
                Fax: (212) 448-0066
                *Attorneys for Plaintiffs*