UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EMANUEL PRELDAKAJ, on behalf of himself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE MONARCH CONDOMINIUM, THE MONARCH CONDOMINUM BOARD OF MANAGERS and LASALA MANAGEMENT, INC.<br><br>Defendants. | Index No.: 20-cv-09433(VSB) |

**DECLARATION OF BRETT R. GALLAWAY IN SUPPORT OF THE PARTIES' JOINT MEMORANDUM OF LAW IN SUPPORT OF (1) PRELIMINARY APPROVAL OF SETTLEMENT; (2) CONDITIONAL CERTIFICATION OF THE PROPOSED SETTLEMENT CLASS; (3) APPOINTMENT OF McLAUGHLIN & STERN, LLP AS CLASS COUNSEL; (4) APPROVAL OF THE PROPOSED NOTICE OF SETTLEMENT; AND (5) SCHEDULING A FAIRNESS HEARING FOR FINAL APPROVAL OF THE SETTLEMENT**

I, Brett R. Gallaway, declare under penalty of perjury as follows:

1.  I am a partner in the firm of McLaughlin & Stern, LLP ("M&S"), proposed Class Counsel in the above-referenced action. I respectfully submit this Declaration in support of the parties' joint motion for preliminary approval of the settlement of this Litigation pursuant to a Joint Stipulation of Settlement and Release (the "Agreement") dated as of July 11, 2021. Unless otherwise defined, capitalized terms used herein shall have the same use and meaning as in the Agreement. I am fully familiar with the facts and circumstances set forth herein.

**Background and Experience**

2.  I received a Juris Doctor from Tulane University Law School in May 2011 and have been admitted to the bars of New York, the Eastern District of New York and the Southern District of New York since 2012. Since 2012, my practice has been devoted primarily to

representing employees in the class action field, including wage-and-hour class actions and WARN Act class actions.

    3.    In 2019, I became co-chair of the class action department at M&S. Since that time, M&S has been appointed Lead or Co-lead counsel in multiple wage-and-hour class actions and secured substantial compensation for employees nationwide. These cases include: *Civil et al. v Starrett City, Inc., et al.*, Index No. 18-cv-2256 (E.D.N.Y) (M&S appointed lead counsel and obtained a $4.75 million settlement as counsel for over 950 employees at a similar cooperative housing development who were not compensated for work performed before and after scheduled shifts); *Morales v Rochdale Village, Inc. et al.*, Index No. 15-cv-502 (E.D.N.Y) (M&S appointed lead counsel and obtained a $2.65 million settlement as counsel for over 1,500 employees at a similar cooperative housing development who were not compensated for work performed before and after scheduled shifts); *Ramirez v. Riverbay Corp.*, Index No.: 13-cv-2367 (S.D.N.Y.) (M&S appointed Co-lead counsel and obtained a $6.25 million settlement as counsel for over 1,700 employees at a similar cooperative housing development who were not compensated for work performed before and after scheduled shifts and wrongfully paid compensatory time rather than overtime cash payments); *Siewharack v. Queens Long Island Medical Group, P.C.*, Index No.: 11-cv-3603 (E.D.N.Y.) (M&S appointed Co-lead counsel and obtained $2.45 million settlement for employees of medical company who were not compensated for time worked); *Ludwig v. Pret A Manger*, Index No.: 11-cv-5677 (S.D.N.Y.) (M&S appointed Co-lead and obtained $299,000 settlement for misclassified managers in training); *Marshall v. Deutsche Post DHL Express (USA) Inc.*, Index No.: 13-cv-1471 (S.D.N.Y.) (M&S appointed Lead Counsel and obtained a $1.5 million settlement as class counsel in a wage and hour class action on behalf of DHL clearance agents in New York, California and Florida); and *Terrana v. JCPenney*, Index No.: 13-cv-0460 (S.D.N.Y.)

(M&S appointed Co-lead counsel and obtained a $750,000 settlement in a wage and hour class action on behalf of non-exempt hourly employees of JCPenney in New York).

**The Litigation and Settlement Negotiations**

4.  On November 10, 2020, Named Plaintiff filed a 23-page class and collective action complaint (the "Complaint") against the Monarch Defendants in the United States District Court for the Southern District of New York, No. 20-cv-9433 (VSB), captioned *Preldakaj v. The Monarch Condominium, et al.* (the "Action"). In the Complaint, Named Plaintiff generally alleges that the Monarch Defendants owe him and other current and former non-supervisory, non-exempt building service staff members paid on an hourly basis who worked at The Monarch Condominium during the period from November 10, 2017, through the date of any Preliminary Approval Order issued in this matter (the "Class Members") unpaid straight and overtime compensation under the FLSA because the Monarch Defendants (i) pay Class Members according to their scheduled shifts even though employees are routinely asked to perform work on their days off or for several hours per day outside of the parameters of their regularly scheduled shift; (ii) require Class Members to clock in/out and work before and after their shifts and during meal breaks; (iii) have a policy of refusing to pay *any* overtime to Class Members despite when they perform work; (iv) offer Class Members "comp-time" in lieu of overtime compensation; (v) utilize a time- clock system that rounds employee time always to the Class Member's disadvantage; and (vi) direct supervisors to alter time reports to reduce the wages employees are paid. Named Plaintiff further asserts Federal Rule 23 class claims for the same allegations against the Monarch Defendants under the wage and hour laws of New York.

5.  Before initiating the action, I, along with other attorneys at M&S, conducted a thorough investigation into the merits of the potential claims and defenses. We focused our

investigation and legal research on the underlying merits of Class Members' claims, their duties and hours worked, Monarch's timekeeping system and policies, and the propriety of class certification.

6.      In connection with these efforts, Class Counsel received and reviewed thousands of pages of documents from the Monarch Defendants, including collective bargaining agreements and Class Member time and payroll records. Class Counsel also spoke with a number of Class Members regarding their work experiences at the Monarch Condominium and secured six detailed declarations from Class Members attesting to and supporting Named Plaintiff's allegations in the Complaint. Moreover, Class Counsel analyzed and prepared a detailed individual damages analysis utilizing each Class Member's time and payroll records in the calculation of Class Member damages.

7.      Contemporaneous with these efforts in informal discovery and damage analysis, and pursuant to the terms of the Collective Bargaining Agreement, Class Counsel and counsel for the Monarch Defendants participated in mandatory mediation to explore settlement of the claims asserted in the Complaint.  Robin Gise, Esq. (the "Mediator"), an experienced and well-respected employment wage-and-hour mediator, was selected as mediator in accordance with the mediation provisions of the Collective Bargaining Agreement.  Counsel thereafter submitted to the Mediator comprehensive mediation statements outlining the claims in the Litigation, the risks associated with those claims and the viability of the Monarch Defendants' defenses.

8.      The first of three all-day mediation sessions was then held on March 24, 2021. The Parties were not able to reach a resolution during the first mediation and scheduled a second all-day mediation which occurred on April 13, 2021. In the interim, Class Counsel was actively engaged with the Mediator to discuss updates and settlement strategy. Like the first mediation, the

second mediation was also unsuccessful, but the Parties agreed to continue good faith negotiations during a third and final all-day mediation which took place on April 23, 2021. Again, during this interval and thereafter, Class Counsel was actively engaged with the Mediator, Named Plaintiff and numerous Class Members, all of whom took active involvement in the mediation process. Despite three full-day mediations, the parties were still not able to reach a resolution during the April 23rd mediation and continued to negotiate with the assistance of the Mediator for several days thereafter and finally reached an agreement as to material terms of a settlement in the amount of $912,500 on April 30, 2021 after a mediator's proposal.  In the estimation of Class Counsel, this sum represents more than half of Class Members' total compensatory damages, an outstanding result by any measure.

9. Over the next several months, Counsel for all Parties negotiated the terms of the Agreement and its accompanying exhibits. These terms were highly contested and required numerous follow up sessions with the Mediator and extensions to submit the Agreement to the Court. That Agreement is now being submitted to the Court for preliminary approval.

10. At all times during the settlement negotiation process, negotiations were conducted on an arms'-length basis, and they have produced a result that Class Counsel believes to be in the best interests of the Class in light of the costs and risks of continued litigation.  Class Counsel, who have a great deal of experience in the prosecution of wage-and-hour class actions, has carefully evaluated the merits of the case and the proposed settlement.  Class Counsel believes that this settlement achieves all the objectives of the litigation, namely a substantial monetary settlement to Class Members who were subjected to the allegedly unlawful wage policies alleged in the Complaint.

**Principal Terms of the Settlement**

    A.    **The Settlement Fund**

    11.    Under the Agreement, the Settling Entities have agreed to pay into a Qualified Settlement Fund the Gross Settlement Amount of $912,500.

    12.    From the Gross Settlement Amount will be deducted: (i) settlement administration fees, costs, and expenses, including but not limited to, the Settlement Claim Administrator's fees and costs, and costs of all notices; (ii) Court-approved attorneys' fees and costs for Class Counsel; (iii) Court-approved Service Award to the Named Plaintiff; and (iv) a special reserve fund as described in Sections 1.49, 3.1(F) and 3.4(B)(2) of the Settlement Agreement. The amount remaining after these deductions, called the Net Settlement Fund, will be distributed to eligible Class Members. The employer's share of payroll taxes shall be paid by the Settling Entities in addition to the Gross Settlement Amount.

    B.    **Class Members**

    13.    The Litigation is being settled on behalf of approximately 30 Class Members, who consist of: (i) all FLSA Class Members (who are current and former non-supervisory, non-exempt hourly building service staff members who worked at The Monarch Condominium during the period from November 10, 2017, through the date of the Preliminary Approval Order (the "Preliminary Approval Date")); and (ii) Rule 23 Class Members (who are individuals employed in New York State and who worked as non-supervisory, non-exempt hourly paid building service staff members at The Monarch Condominium during the period from November 10, 2014, through the Preliminary Approval Date).

    C.    **Releases**

    14.    All Class Members who do not exclude themselves from the Settlement will release the Settling Entities and their related parties from all Released State Law Claims (which includes

failure to pay minimum wage, failure to pay overtime, failure to pay for all hours worked, failure to provide meal and rest periods, failure to timely pay final wages, and/or failure to furnish accurate wage statements or other notices, and any and all claims for recovery of compensation, overtime pay, minimum wage, premium pay, interest, and/or penalties).  All Class Members who receive and cash Settlement Checks will release the Settling Entities and their related parties from all Released Federal Law Claims (which includes all claims for any type of relief under the FLSA).

D. **Allocation Formula**

15. If and when the Settlement is approved, the Settling Entities shall produce Class Records for all Class Members.  The Class Records will include information concerning Class Members' time and payroll records from November 10, 2014 through May 31, 2021 indicating the number of weeks worked during the Relevant Time Frame for each Class Member.  Class Counsel will then calculate each Class Members' expected total Settlement Amount based on a pro rata allocation from the applicable number of workweeks per Class Member from the Gross Settlement Amount. Each Class Member will be assigned an individual percentage amount of the Gross Settlement Amount based on their individual number of workweeks compared to the total amount of workweeks attributable to the entire Class. Each Class Member's percentage amount of the Gross Settlement Amount shall be assigned to the Net Settlement Fund and in order to compute that Class Member's share of the Net Settlement Fund (an "Individual Settlement Amount").  For example, if there are 10,000 total workweeks amongst all Class Members and an individual Class Member is allocated 500 workweeks, that Class Member's percentage of the Net Settlement Fund is 5%, and the Net Settlement Fund is $600,000.00, then that Class Member's Individual Settlement Amount would be $30,000.00 (subject to the applicable tax withholdings).  A Class Member shall only be entitled to receive that Class Member's percentage of the Net Settlement Fund as calculated above.

E. **Attorneys' Fees, Costs and Service Awards**

16. At the Fairness Hearing, Class Counsel will ask the Court for an award of attorneys' fees of no more than one-third of the Gross Settlement Amount for the work they performed, the risks they confronted and the result they achieved on behalf of the Class. Class Counsel will also request reimbursement of their litigation costs and expenses to be paid from the Qualified Settlement Fund. In addition, the Named Plaintiff will apply for a $10,000 Service Award.

**Exhibits**

Attached hereto are the following exhibits:

**Exhibit 1**: The Agreement

**Exhibit 2**: The proposed Notice

**Exhibit 3**: The proposed Preliminary Order

I declare under penalty of perjury, 28 U.S.C. § 1746, that the foregoing is true and correct.

Dated: July 12, 2021
New York, NY

_____
Brett R. Gallaway