UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EMANUEL PRELDAKAJ, on behalf of himself and all
others similarly situated,

                    Plaintiffs,

   v.

THE MONARCH CONDOMINIUM, THE MONARCH
CONDOMINUM BOARD OF MANAGERS and
LASALA MANAGEMENT, INC.

                    Defendants.

Index No.: 20-cv-09433(VSB)

**JOINT STIPULATION OF
SETTLEMENT AND RELEASE**

## INTRODUCTION

This Joint Stipulation of Settlement and Release (the "Agreement") is entered into by and between Emanuel Preldakaj (the "Named Plaintiff"), individually and on behalf of the class of individuals that he seeks to represent ("Class Members" and collectively with Named Plaintiff also as "Class Members"), and The Monarch Condominium, The Monarch Condominium Board of Managers, and LaSala Management, Inc. (collectively, "Monarch Defendants" or "Settling Entities" and together with Named Plaintiffs and Settling Entities as the "Parties").

## RECITALS

WHEREAS, on November 10, 2020, Named Plaintiff filed a class and collective action complaint (the "Complaint") against the Monarch Defendants in the United States District Court for the Southern District of New York, No. 20-cv-09433(VSB), captioned *Preldakaj v. The Monarch Condominium., et al.* (the "Litigation"), on behalf of current and former non-exempt hourly paid employees who worked at The Monarch Condominium, which is a luxury New York City Highrise residential building located on the Upper East Side of Manhattan, New York; and

WHEREAS, the Named Plaintiff alleges in the Litigation that Monarch Defendants owe him and other Class Members unpaid straight and overtime compensation under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), and also assert Federal Rule 23 class claims against Monarch Defendants under the wage and hour laws of New York; and

WHEREAS, the purpose of this Agreement is to settle fully and finally all Released Claims (as hereinafter defined) between Class Members and Settling Entities, including all claims asserted in the Litigation; and

1404146.1

WHEREAS, Settling Entities deny all of the allegations made by Named Plaintiff in the Litigation and deny that they are liable or owe damages to anyone with respect to the alleged facts or causes of action asserted in the Litigation; and

WHEREAS, on March 24, 2021, April 13, 2021 and April 23, 2021, the Named Plaintiff and Monarch Defendants participated in three separate full-day, private mediation sessions conducted virtually due to the COVID-19 Pandemic (collectively, the "Mediations"), which were conducted by experienced wage-and-hour mediator Robin Gise, Esq.; and after extensive negotiations during and subsequent to the Mediations, the Named Plaintiff and Monarch Defendants reached an accord resulting in this Agreement; and

WHEREAS, without admitting or conceding any class or individual liability or damages whatsoever, and without admitting or conceding that any straight or overtime compensation was improperly calculated and/or withheld from the Named Plaintiff and/or any Class Members, the Settling Entities have agreed to settle the Litigation on the terms and conditions set forth in this Agreement, to avoid the burden, expense, and uncertainty of continuing the Litigation;

WHEREAS, solely for the purpose of settling this Litigation, and without admitting or conceding that class and/or collective certification is warranted, and further without admitting any wrongdoing or liability, the Settling Entities have agreed to the dissemination of a notice of settlement pursuant to the FLSA and the Federal Rules of Civil Procedure to cover the Released Claims to all Class Members employed by the Settling Entities during the Relevant Period (as defined below); and

WHEREAS, the Named Plaintiff's Counsel have analyzed and evaluated the disputed facts, the merits of the claims made against Settling Entities in the Litigation, and the defenses and arguments asserted by Monarch Defendants; have conducted numerous interviews with putative class and collective members and collected several declarations regarding the allegations in the Litigation; have obtained and reviewed documents relating to Settling Entities' compensation policies; and have analyzed Settling Entities' time and payroll data; and

WHEREAS, the Named Plaintiff's Counsel have considered the benefits of this Agreement for the Named Plaintiff and Class Members, based upon their experience with similar cases and their analysis and evaluation of a number of factors (including sharply disputed facts), and have recognized the substantial risks of litigation, including the possibility that the Litigation, if not settled now, might not result in any individual or class recovery whatsoever, or might result in a recovery that is less favorable or that may not realize any benefit for several years; the possibility that class certification might not be granted; and the possibility that, even were class certification to be granted, there is a risk that a class might be decertified in the future; and based upon such considerations and experience, the Named Plaintiff's Counsel are satisfied that the terms and conditions of this Agreement are fair, reasonable, and adequate, and that this Agreement is in the best interests of the Named Plaintiff and Class Members.

2

NOW, THEREFORE, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties hereto agree to a full and complete settlement of the Litigation on the following terms and conditions:

## I.   **DEFINITIONS**

The following capitalized terms used in this Agreement shall have the meanings ascribed to them below.

**1.1   ADEA.** "ADEA" means the Age Discrimination in Employment Act.

**1.2   Agreement.** "Agreement" means this Joint Stipulation of Settlement and Release and all exhibits.

**1.3   Acceptance Period.** "Acceptance Period" means the ninety (90) day period that a Class Member has to sign and cash a Settlement Check.  If the end of the Acceptance Period falls on a Sunday or holiday, the deadline to sign and cash a Settlement Check will be the next business day that is not a Sunday or holiday.

**1.4   Class Counsel.** "Class Counsel" the "Named Plaintiff's Counsel" or "Plaintiffs' Counsel" means McLaughlin & Stern, LLP.

**1.5   Class List.**  "Class List" means the list of information for all Class Members to be provided by the Settling Entities to Class Counsel, as described in Section 2.4(A).

**1.6   Class Members.** "Class Members" means the FLSA Class Members and the Rule 23 Class Members.  The total number of Class Members shall include all non-supervisory, hourly paid non-exempt building service staff members who work or worked for the Monarch Defendants at The Monarch Condominium at any time from November 10, 2014 through the date of the Preliminary Approval Order.

**1.7   Class Records.**  "Class Records" means the time and payroll records for all Class Members to be provided by the Settling Entities to Class Counsel in order to determine the number of applicable workweeks, as described in Section 3.4(B)(1).

**1.8   Complaint.**   "Complaint" means the class and collective action complaint filed on November 10, 2021, in the Court captioned: *Preldakaj v. The Monarch Condominium., et al.*; 20-cv-09433(VSB).

**1.9   Court.** "Court" means the United States District Court for the Southern District of New York.

**1.10**   **Days.** "Days" means business days if the specified number is less than ten (10), and calendar days if the specified number is ten (10) or greater.

**1.11**   **Defendants' Counsel** and **Settling Parties' Counsel.** "Defendants' Counsel" and "Settling Parties' Counsel" means Clifton, Budd & DeMaria, LLP.

**1.12**   **EEOC.** "EEOC" means the Equal Employment Opportunity Commission.

**1.13**   **Effective Date.** The "Effective Date" means the date that is (i) thirty (30) days after the entry of the Final Approval Order by the Court approving this Agreement, with the time to appeal from such Final Approval Order having expired and no notice of appeal or timely motion to extend the time to appeal having been filed; or (ii) if a timely notice of appeal has been filed, fourteen (14) days after the date that the latest of the following, if applicable, has occurred: (a) the final affirmance of an appeal of the Final Approval Order; (b) the expiration of the time for a petition for a writ of certiorari to review any affirmance on appeal of the Final Approval Order; (c) if a writ of certiorari is granted, the final affirmance of the Final Approval Order following review pursuant to the grant of that writ; or (d) the final dismissal of any appeal from the Final Approval Order or the final dismissal of any proceeding on certiorari to review the Final Approval Order.

**1.14**   **Employer Payroll Taxes.** "Employer Payroll Taxes" means all taxes and withholdings an employer is required to make arising out of or based upon the payment of wages in this Litigation, including, without limitation, all federal and state obligations, such as FICA, FUTA, and SUTA.

**1.15**   **ERISA.** "ERISA" means the Employment Retirement Income Security Act.

**1.16**   **Fairness Hearing.** "Fairness Hearing" means the hearing before the Court relating to the Motion for Final Approval.

**1.17**   **Final Approval Order.** "Final Approval Order" means the final Order entered by the Court after the Fairness Hearing approving (i) the terms and conditions of this Agreement; (ii) the distribution of the Settlement Checks and Service Awards; (iii) the amounts of all settlement and professional fees and costs; and (iv) the dismissal of the Litigation with prejudice, and the entry of Judgment pursuant to this Stipulation and in accordance with Fed. R. Civ. P. 58.

**1.18**   **FLSA.** "FLSA" means the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.*

**1.19**   **FLSA Class Members.** "FLSA Class Members" means any and all current and former non-supervisory, non-exempt building service staff members paid on an hourly basis who worked at The Monarch Condominium during the period from November 10, 2017, through the date of the Preliminary Approval Order.

1404146.1

**1.20**    **Full Recovery Amount.** "Full Recovery Amount" means the amount as defined in Section 3.4(B)(1).

**1.21**    **Gross Settlement Amount.** "Gross Settlement Amount" means Nine Hundred Twelve Thousand Five Hundred and 00/100 Dollars ($912,500.00), which Settling Entities shall pay to the Settlement Claims Administrator to settle the Litigation as set forth in this Agreement. The Settling Entities shall pay the Gross Settlement Amount in three (3) installments, paid as follows: (i) Installment I, in the amount of Three Hundred and Four Thousand One Hundred Sixty-Six and 66/100 Dollars ($304,166.66), which shall be deposited into the QSF within sixty (60) days after the Court issues the Preliminary Approval Order; (ii) Installment II of Three Hundred and Four Thousand One Hundred Sixty-Six and 67/100 Dollars ($304,166.67), which shall be deposited into the QSF within one hundred and eighty (180) days after the Court issues the Preliminary Approval Order; and Installment III of Three Hundred and Four Thousand One Hundred Sixty-Six and 67/100 Dollars ($304,166.67), which shall be deposited into the QSF within three hundred (300) days after the Court issues the Preliminary Approval Order. Under no circumstance will the Settling Entities be liable to pay more than the Gross Settlement Amount.

**1.22**    **Individual Settlement Amount.** "Individual Settlement Amount" means the amount as defined in Section 3.4(B)(1).

**1.23**    **Installment I.** "Installment I" means the first of three (3) installment payments, in the amount of Three Hundred and Four Thousand One Hundred Sixty-Six and 66/100 Dollars ($304,166.66), which, combined with the other two installment payments, equals the Gross Settlement Amount to be paid into the QSF by the Settling Entities. Installment I shall be deposited by the Settling Entities into the QSF within sixty (60) days after the Preliminary Approval Order. Subject to Court approval, up to one-half of Installment I will be used to pay Class Counsel's fee and expense award as set forth in Section (4)(C) and the remaining one-half of Installment I will be distributed to Class Members pursuant to the allocation in Sections 3.1, 3.3 and 3.4.

**1.24**    **Installment II.** "Installment II" means the second of three (3) installment payments, in the amount of Three Hundred and Four Thousand One Hundred Sixty-Six and 67/100 Dollars ($304,166.67), which, combined with the other two installment payments, equals the Gross Settlement Amount to be paid into the QSF by the Settling Entities. Installment II shall be deposited by the Settling Entities into the QSF within one hundred and eighty (180) days after the Preliminary Approval Order. Subject to Court approval, up to one-half of Installment II will be used to pay the remainder of Class Counsel's fee and any expense award as set forth in Section (4)(C) and the remaining one-half of Installment II will be distributed to Class Members pursuant to the allocation in Sections 3.1, 3.3 and 3.4.

**1.25**    **Installment III.** "Installment III" means the third of three (3) installment payments, in the amount of Three Hundred and Four Thousand One Hundred Sixty-Six and 67/100 Dollars

($304,166.67), which, combined with the other two installment payments, equals the Gross Settlement Amount to be paid into the QSF by the Settling Entities. Installment III shall be deposited by the Settling Entities into the QSF within three hundred (300) days after the Preliminary Approval Order. All of Installment III will be used to pay will be distributed to Class Members pursuant to the allocation in Sections 3.1, 3.3 and 3.4 and be used to pay all expenses of the Settlement Claims Administrator.

1.26   **IRS.**  "IRS" means the United States Internal Revenue Service.

1.27   **Litigation.** "Litigation," as set forth in the Recitals, means the litigation initiated by the Complaint alleging violations of the FLSA and the wage and hours laws of New York.

1.28   **Mediations.**  "Mediations" as set forth in the Recitals, means the mediations conducted on March 24, 2021, April 13, 2021 and April 23, 2021, before Robin Gise, Esq., as mediator, between the Named Plaintiff and the Monarch Defendants.

1.29   **Monarch Defendants.** "Monarch Defendants" collectively means The Monarch Condominium, The Monarch Condominium Board of Managers. and LaSala Management, Inc. unless otherwise indicated.

1.30   **Named Plaintiff.** "Named Plaintiff" as set forth in the Introduction, means Emanuel Preldakaj.

1.31   **Net Settlement Fund.** "Net Settlement Fund" means the remainder of the Gross Settlement Amount after deductions for: (i) all settlement administration fees, costs, and expenses, including but not limited to, the Settlement Claim Administrator's fees and costs and costs of all notices; (ii) Court-approved attorneys' fees and costs for Class Counsel; (iii) Court-approved Service Awards to the Named Plaintiff as specified herein; and (iv) a special reserve fund as described in Sections 3.1(F) and 3.4(B)(2).

1.32   **Notice or Notices.** "Notice" or "Notices" means the Court-approved Notice of Proposed Settlement of Class and Collective Action Lawsuit and Fairness Hearing, to be attached as an exhibit to Named Plaintiff's anticipated motion for a Preliminary Approval Order; together with any subsequent Court-approved notices that may be sent by the Settlement Claims Administrator pursuant to this Agreement.

1.33   **Objection Period.**  "Objection Period" means the thirty (30) day period following the mailing of the Notices to the Rule 23 Class Members, as described in Section 2.6(A).  The Objection Period shall run concurrently with the Opt-out Period.

1.34   **Objector.** "Objector" means an individual who files an objection to this Agreement, and does not include any individual who opts-out of this Agreement.

1404146.1

1.35    **Opt-in Plaintiffs.** "Opt-in Plaintiffs" means those individuals who opt into the Litigation by negotiating their Settlement Checks before the end of the ninety (90) day Acceptance Period.

1.36    **Opt-out Period.** "Opt-out Period" means the thirty (30) day period following the mailing of the Notices to the Rule 23 Class Members, as described in Section 2.5(A). The Opt-out Period shall run concurrently with the Objection Period.

1.37    **Opt-out Statement.** "Opt-out Statement" means a written signed statement that an individual Rule 23 Class Member has decided to opt-out and not be included in this Agreement, as further described in Section 2.5(A), which is timely submitted by such individual to the Settlement Claim Administrator.

1.38    **Paid Class Member.** "Paid Class Member" means all Opt-in Plaintiffs who cashed their Settlement Checks during the Acceptance Period, as defined in Section 3.1(E).

1.39    **Parties.** "Parties," as set forth in the Introduction, means, collectively, Named Plaintiff and Monarch Defendants.

1.40    **Plaintiff.** "Plaintiff" means Named Plaintiff.

1.41    **Preliminary Approval Motion.** "Preliminary Approval Motion" means the motion contemplated by Section 2.3.

1.42    **Preliminary Approval Order.** "Preliminary Approval Order" means the Order entered by the Court in substantially the form attached to Plaintiff's prospective motion for preliminary approval, preliminarily approving the terms and conditions of this Agreement, and directing the manner and timing of providing Notices to the Class Members.

1.43    **Qualified Settlement Fund or QSF.** "Qualified Settlement Fund" or "QSF" means the account established by the Settlement Claims Administrator for the Settlement Amount paid by Settling Entities. The QSF will be controlled by the Settlement Claims Administrator subject to the terms of this Agreement and the Court's Orders for Preliminary Approval and Final Approval. Interest, if any, earned on the QSF will become part of the Settlement Amount.

1.44    **Released Claims.** "Released Claims" collectively means the Released Federal Law Claims and the Released State Law Claims.

1.45    **Released Federal Law Claims.** "Released Federal Law Claims" collectively means any and all federal law wage-and-hour claims, obligations, demands, actions, rights, causes of action, and liabilities against Releasees, of whatever kind and nature, character and description, whether known or unknown, and whether anticipated or unanticipated,

7

including unknown claims, by an FLSA Class Member that accrued against the Releasees from the beginning of the world up to and including the date of the Preliminary Approval Order, for any type of relief under the Fair Labor Standards Act of 1938 ("FLSA"), including without limitation FLSA claims for wages, overtime, damages, unpaid costs, penalties (including late payment penalties), premium pay, liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, restitution, or equitable relief, and any related or derivative claims, including but not limited to related or derivative claims arising under the Employment Retirement Income Security Act ("ERISA").

1.46    **Released State Law Claims.** "Released State Law Claims" collectively means any and all wage-and-hour claims, obligations, demands, actions, rights, causes of action, and liabilities under New York law against the Releasees of whatever kind and nature, character and description, whether known or unknown, and whether anticipated or unanticipated, including unknown claims, by a Rule 23 Class Member that accrued against the Releasees from the beginning of the world up to and including the date of the Preliminary Approval Order, including without limitation claims under any legal theory (including but not limited to claims for breach of contract and/or terms and conditions of an applicable collective bargaining agreement) for failure to pay minimum wage, failure to pay overtime, failure to pay for all hours worked, failure to provide meal and rest periods, failure to timely pay final wages, failure to reimburse for business expenses, and/or failure to furnish accurate wage statements or other notices (including but not limited to notices of pay rate and payday under Section 195.1 of the New York Labor Law), and any and all claims for recovery of compensation, overtime pay, minimum wage, premium pay, interest, and/or penalties, and any related or derivative claims, including but not limited to related or derivative claims under ERISA, other penalties, related tort and punitive and liquidated damages claims, and/or violations of any other state or local statutory and common law.

1.47    **Releasees.** "Releasees" means The Monarch Condominium, The Monarch Condominium Board of Managers and LaSala Management, Inc., and each of its and/or their respective present and former affiliates, divisions, subsidiaries, parents, successors, assigns, and/or predecessors, and/or each of their respective affiliated, related and/or merged entities; and/or each of its and/or their respective present and/or former officers, partners, managers, directors, employees, agents, attorneys, shareholders, unit owners, investors, insurers or reinsurers, employee benefit plans (and the trustees, administrators, fiduciaries, agents, representatives, insurers and reinsurers of such plans), trustees, heirs, administrators, executors, representatives and/or principals thereof, their successors and assigns, and all persons or entities acting by, through, under or in concert with any of them, and any individual or entity that could be jointly liable with any of them.

1.48    **"Relevant Period."**   "Relevant Period" means the period from November 10, 2014 through the date of the Preliminary Approval Order.

**1.49**   **Reserve Fund.**  "Reserve Fund" means the fund created from uncashed checks described in Section 3.4(B)(2).

**1.50**   **Rule 23 Class Members**. "Rule 23 Class Members" means individuals who were employed in New York State and worked as non-supervisory, non-exempt building service staff members paid on an hourly basis at The Monarch Condominium from November 10, 2014 through the date of the Preliminary Approval Order.

**1.51**   **SEC.**  "SEC" means the United States Securities and Exchange Commission.

**1.52**   **Service Award Plaintiff.**  "Service Award Plaintiff" means the individual described in Section 3.3.

**1.53**   **Settlement Claims Administrator.**   The "Settlement Claims Administrator" means Analytics, LLC. The Settlement Claims Administrator will be responsible for locating Class Members; mailing the Notices to Class Members; emailing notices to class members; responding to inquiries from Class Members; calculating Class Members' settlement allocations; reporting on the state of the Settlement to the Parties; establishing and administering the QSF; distributing settlement payments; calculating and withholding Class Members' shares of applicable payroll taxes (including, without limitation, federal, state, and local income tax withholding, FICA, Medicare and any state or local employment taxes); remitting such withheld funds to the appropriate taxing authorities and providing any related tax reporting; preparing and filing all tax returns necessary for the Settlement and the QSF; preparing a declaration regarding its due diligence in the claims administration process; and performing such other duties as the Parties may jointly direct or as are specified herein, including, without limitation, such duties as are specifically set forth in Sections 2 and 3 hereof. All settlement administration amounts, including but not limited to, the Settlement Claims Administrator's fees and costs, shall be paid from the Gross Settlement Amount in the QSF.  If the Settlement is not given final approval by the Court and does not become Effective, the any settlement administration fees and costs incurred shall be deducted from the QSF.

**1.54**   **Settlement Checks.** "Settlement Checks" means checks issued to Class Members      in Installment I, Installment II and Installment III for their share of the Net Settlement Fund calculated in accordance with this Agreement.

**1.55**   **Settlement Notice.** "Settlement Notice" means the notice sent to Class Members with the Settlement Checks, and shall be in substantially the form attached as an exhibit to Plaintiffs' prospective motion for a Preliminary Approval Order.

**1.56**   **Settling Entities.** "Settling Entities" collectively means the Monarch Defendants.

**1.57**   **SRO.**  "SRO" means an agency or organization described in Section 4.1(C)(2).

1404146.1

**1.58    Tax Authority.**  "Tax Authority" means any entity as defined in Section 3.5(E)(1).

**1.59    Tax Claim.**  "Tax Claim" means any claim as defined in Section 3.5(E)(1).

## II.    APPROVAL AND CLASS NOTICE

**2.1    Binding Agreement.** This Agreement is a binding agreement and contains all material agreed-upon terms for the Parties to seek a full and final settlement of the Litigation.

**2.2    Retention of the Settlement Claims Administrator.** The Settlement Claims Administrator will be responsible for the services defined in Section 1.53.

(A)    The Settlement Claims Administrator will provide regular reports to the Parties regarding the status of the mailing of the Notices to Class Members; a summary of the individuals who have negotiated the Settlement Checks, requested to opt-out or submitted objections; the claims administration process; distribution of the Settlement Checks; and other matters relating to the Settlement.  Within ten (10) days of the close of the Acceptance Period, the Settlement Claims Administrator shall prepare a final list of all Class Members who timely negotiated their Settlement Checks, together with copies of the front and backside of the Settlement Checks (reflecting the Class Members' Consents to Join), and provide such information and documents to counsel for Plaintiffs and Settling Entities. The Settlement Claims Administrator, Named Plaintiffs and counsel for Named Plaintiffs shall use such information for purposes of settlement of this case only, and shall not disclose such information to other persons or entities except as expressly provided herein or as required by law.  The Settlement Claims Administrator will update and supplement this information as necessary. The Parties will cooperate to ensure that appropriate consents are filed with the Court for all Opt-In Plaintiffs and that all personal and financial information shall be redacted before filing.

(B)    The Settlement Claims Administrator will promptly provide an IRS Form W-9 to Settling Entities following its engagement by the Parties. Settling Entities shall cooperate with the Settlement Claims Administrator, provide accurate information based on the records in their possession and control necessary to calculate the amounts of the Settlement Checks, provide reasonably available data to assist the Settlement Claims Administrator in locating Class Members, including social security numbers if requested, and provide other reasonably available information in their possession or control related to the administration of the Settlement.

**2.3    Preliminary Approval Motion.**

(A)    By July 13, 2021, Named Plaintiff shall move the Court for joint preliminary approval of this Agreement ("Preliminary Approval Motion") and entry of the Preliminary Approval Order. The Preliminary Approval Motion will be provided to Settling Entities for review at least seven (7) days prior to filing with the Court and Named Plaintiff will consider and discuss Settling Entities' reasonable comments. In connection with the Preliminary Approval Motion, Named Plaintiff will submit to the Court all exhibits, including the proposed Preliminary Approval Order.

(B)    In the Preliminary Approval Motion, Class Counsel will inform the Court of the intended process to obtain a "Preliminary Approval Order" that will, among other things: (1) schedule a fairness hearing on the question of whether the proposed Agreement should be finally approved as fair, reasonable and adequate to the Class Members; (2) appoint McLaughlin and Stern, LLP as Class Counsel; (3) approve as to form and content the proposed Notice; (4) direct the mailing of the Notice and Opt-out Statement by First-Class United States Mail to the Class Members; and (5) preliminarily approve this Agreement.

(C)    The Preliminary Approval Motion also will seek to schedule the date(s) for individuals to opt-out of or provide objections to this Agreement; for Named Plaintiffs to file a Motion for Final Approval; and for a Fairness Hearing for Final Approval of the Settlement before the Court at the earliest practicable date.

(D)    The Parties will work together, diligently and in good faith, to obtain expeditiously a Preliminary Approval Order, Final Approval Order, and final Judgment and dismissal with prejudice.  Any disputes which arise between the Parties related to the Parties' efforts to obtain a Preliminary Approval Order, a Final Approval Order and a final Judgment and dismissal with prejudice shall be submitted to this Court.

**2.4    Notice to Class Members.**

(A)    Within fourteen (14) days of the Court's issuance of a Preliminary Approval Order, Settling Entities will provide the Settlement Claims Administrator the following information, in electronic form, for all Class Members: name, last known addresses, email addresses, social security numbers, dates of employment and job titles with dates ("Class List").  Additionally, pursuant to Section 3.4(B)(1), on or before August 3, 2021, Settling Entities shall provide Class Records to Class Counsel for purposes of individual Class Member damage calculations within the applicable liability periods set forth in Sections 1.6 and 1.19 above, to the extent that such information exists on file with Settling Entities.

11

(B)     Prior to mailing the Court-approved Notice of Settlement of Class and Collective Action Lawsuit and Fairness Hearing, the Claims Administrator will update the addresses for those on the Class List using the National Change of Address database and other available resources deemed suitable by the Claims Administrator.

(C)     Within fourteen (14) days of the receipt of the Class List, or as soon thereafter as practicable, the Settlement Claims Administrator will mail to all Class Members, via First-Class United States Mail, postage prepaid, and email the Court-approved Notice of Settlement of Class and Collective Action Lawsuit and Fairness Hearing.

(D)     The Settlement Claims Administrator will take reasonable steps to obtain the correct address of any Class Members for whom a Notice is returned by the United States Post Office as undeliverable, and shall attempt re-mailings as described in this Agreement.  The Settlement Claims Administrator will notify Class Counsel and Defendants' Counsel of any Notice sent to a Class Member that is returned as undeliverable after the first mailing, as well as any such Notice returned as undeliverable after any subsequent mailing(s) as set forth in this Agreement.

**2.5     Rule 23 Class Member Opt-Outs.**

(A)     Rule 23 Class Members who choose to opt-out of the settlement as set forth in this Agreement must mail, via First Class United States Mail, postage prepaid, a written, signed statement to the Settlement Claims Administrator, which states he or she is opting out of the settlement by saying, "I opt out of the Monarch Condominium wage and hour settlement," and which includes his or her name, job title, address, and telephone number(s) (the "Opt-out Statement").  To be effective, an Opt-out Statement must be postmarked within thirty (30) days from the mailing of the Notice to the Class Member (the "Opt-Out Period").  For any deadline under this Agreement that is based on a postmark, in the event that there is no postmark date on the document being mailed by the Class Member, it shall be presumed that the document was mailed five (5) days prior the Settlement Claims Administrator's receipt of the document, excluding any Sunday or other day for which no postal service was provided. It is the responsibility of the individual seeking to opt-out to retain a copy of the Opt-out Statement and proof of timely mailing hereunder.

(B)     For Rule 23 Class Members whose first mailing was returned to the Settlement Claims Administrator as undeliverable, the Claims Administrator shall forward them to any forwarding addresses provided by the United States Post Office. If no such forwarding address is provided, the Claims Administrator shall perform one (1) skip trace to attempt to obtain the most recent addresses for these Class Members.  Rule 23 Class Members whose first mailing was returned as undeliverable will be allowed to opt-out or object up to thirty (30) days from the date of the second mailing. The Settlement Claims Administrator shall not attempt

more than two (2) mailings of the Notice to any Class Member, and no mailing shall occur more than thirty (30) days after the first mailing to Class Members.

(C)     The Settlement Claims Administrator shall keep accurate records of the dates on which it sends Notices to Class Members.

(D)     The Settlement Claims Administrator will stamp the postmark date on the original of each Opt-out Statement that it receives and shall serve copies of each Opt-out Statement on Class Counsel and Defendants' Counsel not later than three (3) days after receipt thereof.   Class Counsel will promptly file with the Clerk of Court stamped copies of any Opt-out Statements. The Settlement Claims Administrator will, within 24 hours of the end of the Opt-Out Period, send a final list of all Opt-out Statements to Class Counsel and Defendants' Counsel by both email and overnight delivery.   The Settlement Claims Administrator will retain the stamped originals of all Opt-out Statements and originals of all envelopes accompanying Opt-out Statements in its files until such time as the Settlement Claims Administrator is relieved of its duties and responsibilities under this Agreement.

(E)     Any Rule 23 Class Member who does not properly submit an Opt-out Statement pursuant to this Agreement will be deemed to have accepted the Settlement and the terms of this Agreement and will be issued a Settlement Check, which will contain releases of the Rule 23 Class Members' Claims and of the FLSA Class Members' Claims, and a consent to join the Litigation, as set forth in this Agreement.   Any Rule 23 Class Member who does not properly submit an Opt-out Statement shall be bound by this Settlement and deemed to have released the Released State Law Claims regardless of whether he or she negotiates the Settlement Check. Any Rule 23 Class Member who negotiates a Settlement Check shall be bound by the Settlement and deemed to have released the Released State Law Claims and the Released Federal Law Claims regardless of whether such individual also submitted an Opt-out Statement.

(F)     Named Plaintiff shall not opt-out of the Settlement, and his execution of this Stipulation shall signal his agreement to all of the terms of the Settlement.

**2.6     Objections to Settlement.**

(A)     Rule 23 Class Members who do not opt-out and who wish to object to the proposed settlement must do so in writing. To be considered, a written objection must be mailed to the Settlement Claims Administrator via First-Class United States Mail, postage prepaid, and be received by the Settlement Claims Administrator within thirty (30) days from the mailing of the Notice to the Rule 23 Class Member (the "Objection Period"). The written objection must include the words, "I object to the settlement in the Monarch Condominium wage and hour settlement" as well as all

reasons for the objection. Any reasons not included in the written objection will not be considered. The written objection must also include the name, job title, address, and telephone number(s) for the Rule 23 Class Member making the objection. The Settlement Claims Administrator will stamp the date received on the original objection and send dated-stamped copies of each objection to Class Counsel and Defendants' Counsel by email and overnight delivery no later than three (3) days after receipt thereof. Class Counsel will promptly file the date-stamped originals of any and all objections with the Court. It is the responsibility of any Rule 23 Class Member who files an objection (an "Objector") to retain a copy of the objection and proof of timely mailing hereunder.

(B)     A valid Objector also has the right to appear at the Fairness Hearing either in person or through counsel hired by the Objector. An Objector who wishes to appear at the Fairness Hearing must state his or her intention to do so in writing on his or her written objections at the time he or she submits his or her written objections by including the words, "I intend to appear at the Fairness Hearing" in his or her written objection. An Objector may withdraw his or her objections at any time. No Rule 23 Class Member may appear at the Fairness Hearing unless he or she has submitted a timely objection that complies with all procedures provided in this Section 2.6(B) and the previous Section 2.6(A). No Rule 23 Class Member may present an objection at the Fairness Hearing based on a reason not stated in his or her written objections. A Rule 23 Class Member who has submitted an Opt-out Statement may not submit objections to the Settlement.

(C)     The Parties may file with the Court written responses to any filed objections no later than three (3) days before the Fairness Hearing.

**2.7     Challenges to Allocation.**

(A)     The Notices sent to Class Members shall advise them of their dates of employment during the relevant limitations period as well as the estimated amount of their settlement payment, and provide directions on how to challenge that allocation.

(B)     To be effective, any challenge to the allocation must be postmarked within thirty (30) days from the mailing of the Notice to the Class Member.

(C)     The Settlement Claims Administrator shall promptly advise the Parties of any challenge to the allocation by a Class Member, which challenge shall be resolved as provided in Section 3.1(F).

**2.8     Motion for Judgment and Final Approval.** Not later than fifteen (15) days before the Fairness Hearing, Named Plaintiffs will submit a Joint Motion for Judgment and Final Approval. The Joint Motion for Judgment and Final Approval will be provided to Settling

Entities for review at least seven (7) days prior to filing with the Court, and Plaintiffs will consider and discuss Settling Entities' reasonable comments.

**2.9**  **Entry of Judgment.** At the Fairness Hearing, the Parties will request that the Court, among other things, (a) enter Judgment in accordance with this Agreement, (b) approve the Settlement and this Agreement as final, fair, reasonable, adequate, and binding on all Rule 23 Class Members who have not timely opted out pursuant to Section 2.5, (c) approve the Settlement and this Agreement as final, fair, reasonable, adequate, and binding on Rule 23 Class Members and all FLSA Class Members who endorse, negotiate, present or otherwise cash Settlement Checks, (d) approve Class Counsel's application for fees and costs, and (e) dismiss the Litigation with prejudice.

**2.10**  **Effect of Revocation or Failure to Grant Preliminary or Final Approval.** In the event the Court fails to enter Judgment in accordance with this Agreement, or such Judgment does not become Final as defined herein, or the Agreement does not become Effective, the Parties jointly agree to first: (1) seek reconsideration or appellate review of the decision denying entry of Judgment, or (2) attempt to renegotiate the Settlement and seek Court approval of the renegotiated Settlement. If the parties are unable to successfully appeal the judgment or renegotiate the Settlement, the Parties agree that (i) this Agreement shall have no force or effect, and the Settling Parties shall have no obligation to make any payment under this Agreement, other than this Section 2.10 and the non-admission provisions in Section 4.3; (ii) neither this Agreement, nor any other related papers or orders, nor the negotiations leading to the Settlement, shall be cited to, used, or admissible in any judicial, administrative, or arbitral proceeding for any purpose or with respect to any issue, substantive or procedural; (iii) the preliminary and conditional certification of the class, if any, shall become null and void, and the fact of certification shall not be cited to, used, or admissible in any judicial, administrative, or arbitral proceeding for any purpose or with respect to any issue, substantive or procedural; (iv) none of the Parties will be deemed to have waived any claims, objections, defenses, or arguments with respect to the issue of class or collective action certification or the merits of Plaintiffs' claims or any other issue; (v) all monies paid by the Settling Entities into the QSF shall promptly be returned by the Claims Administrator to the Settling Entities (less actual costs and fees incurred by the Claims Administrator, which shall be allocated pro rata based on amount contributed to the QSF by the respective Settling Entities) and (vi) the Litigation will proceed as if no Settlement had been attempted. In the event this Agreement does not become Final and the Notices of Proposed Settlement of Class and Collective Action Lawsuit and Fairness Hearing have been sent to the Class Members, the Settlement Claims Administrator will provide notice, in a form to be jointly agreed upon by the Parties, to the Class Members that the Agreement did not receive final approval and that, as a result, no payments will be made to Class Members under the Agreement. Such notice shall be mailed by the Settlement Claims Administrator via First-Class United States Mail, postage prepaid, to the addresses used by the Settlement Claims Administrator in mailing the Notice of

Proposed Settlement of Class and Collective Action Lawsuit and Fairness Hearing and Notice of Proposed Collective Action Lawsuit and Fairness Hearing.

**2.11    Releases and Consents to Join.**

(A)    All Rule 23 Class Members who do not timely return Opt-out Statements and all FLSA Class Members (except those FLSA Class Members who are also Rule 23 Class Members and have returned Opt-out Statements) will be issued a Settlement Check, together with a Settlement Notice in the form attached to Plaintiffs' anticipated motion for preliminary approval, by the Settlement Claims Administrator from the QSF in accordance with the Final Approval Order.

(B)    All Settlement Checks shall contain on the back of the check, the following limited endorsement:

"**CONSENT TO JOIN AND FINAL RELEASE OF CLAIMS:**

By endorsing or cashing this check, I consent to join in the case entitled *Preldakaj v. The Monarch Condominium et al.,* No. 20-cv-09433(VSB), now pending in the United States District Court for the Southern District of New York, and agree to be bound by the Settlement Agreement negotiated by Class Counsel in that case, and irrevocably and unconditionally waive, release, extinguish, acquit, and forever discharge the Released Federal Law Claims and Released State Law Claims as defined in the Notice I received with this check.

_____

Signature"

(C)    The Settlement Claims Administrator shall instruct the bank from which the payments shall be made that a check shall be void if any of the language set forth in Section 2.11(B) has been crossed out, excised, deleted, or amended.  Any Settlement Check that is negotiated, however, shall signify the consent of such Class Member to join the case and to the releases in the Released Federal Claims and Released State Law Claims as a matter of law, regardless of whether the check is signed or the language set forth in Section 2.11(B) has been crossed out, excised, deleted, or amended.

(D)    The Settlement Checks and Settlement Notices will be mailed to Class Members by the Settlement Claims Administrator within thirty (30) days after the the Effective Date, subject to the time frames of Installment I, Installment II and Installment III into the QSF as described in Section 3.1(B), below.

(E)     Settling Entities and the Settlement Claims Administrator shall exchange such information as is necessary and reasonably available for the Settlement Claims Administrator to make proper tax withholdings and comply with tax reporting obligations as described in Section 3.5.

## III.    SETTLEMENT TERMS

### 3.1    Settlement Amount.

(A)     Settling Entities shall pay a maximum, non-reversionary Gross Settlement Amount of Nine Hundred Twelve Thousand Five Hundred and 00/100 Dollars ($912,500.00), which shall fully resolve and satisfy any claim for attorneys' fees and costs approved by the Court, any and all amounts to be paid to Class Members, any Court-approved Service Awards to the Named Plaintiff as more fully set forth herein, all payroll taxes and all other applicable taxes (with the sole exception and exclusion of the employer's share of payroll taxes as described in Section 3.5(C)), interest, and the Settlement Claims Administrator's fees and costs. Other than the employer payroll taxes described in Section 3.5(C), Settling Entities will not be required to pay more than the Gross Settlement Amount of Nine Hundred Twelve Thousand Five Hundred and 00/100 Dollars ($912,500.00) under the terms of this Agreement for any purpose whatsoever, including but not limited to Class Counsel's attorneys' fees and costs.

(B)     Provided they have timely received Forms W-9 from the Settlement Claims Administrator and any other tax forms or information needed, Settling Entities shall deposit their respective individually identified share of the Gross Settlement Amount into the QSF at the following times in the following three (3) installments: (i) Installment I, in the amount of Three Hundred and Four Thousand One Hundred Sixty-Six and 66/100 Dollars ($304,166.66), which shall be deposited into the QSF within sixty (60) days after the Court issues the Preliminary Approval Order; (ii) Installment II of Three Hundred and Four Thousand One Hundred Sixty-Six and 67/100 Dollars ($304,166.67), which shall be deposited into the QSF within one hundred and eighty (180) days after the Court issues the Preliminary Approval Order; and Installment III of Three Hundred and Four Thousand One Hundred Sixty-Six and 67/100 Dollars ($304,166.67), which shall be deposited into the QSF within three hundred (300) days after the Court issues the Preliminary Approval Order. Any interest accrued from the QSF shall immediately be added to and become part of the Settlement Amount.

(C)     Within thirty (30) days after the Effective Date, and the applicable dates of Installment I, Installment II and Installment III into the QSF as described in Section 3.1(B), above, the Settlement Claims Administrator shall mail the Settlement Checks. Each installment will be contingent upon the Court's issuance of the Final

17

Approval Order and the occurrence of the Effective Date. For Example, if the Effective date is 90 days after the Preliminary Approval Order, the Claims Administrator shall issue payments to Class Members and Plaintiff's Counsel from Installment I. If the Effective date is more than 180 days from the Preliminary Approval Order, the Claims Administrator shall issue payments to Class Members and Plaintiff's Counsel from Installment I and Instalment II, simultaneously. Class Members will have ninety (90) days from the date of mailing to cash their Settlement Checks (the "Acceptance Period"). Class Members will be informed of the date of the end of the Acceptance Period in the Notices. The Settlement Claims Administrator shall notify the Parties in writing of the date Notices will be sent at least two (2) business days before transmission. Settlement Checks not cashed within the Acceptance Period will be void and a stop-payment directive shall be placed by the Settlement Claims Administrator with the applicable bank with respect to all uncashed Settlement Checks. However, Class Members who, within sixty (60) days of the expiration of the Acceptance Period, demonstrate to the Settlement Claims Administrator good cause for not timely cashing their checks shall be issued replacement checks.

(D)     Class Members who do not timely cash their Settlement Checks during the Acceptance Period will be still bound by the terms of the Released State Law Claims, but will not be subject to or bound by the Released Federal Claims.

(E)     Within ninety (90) days after the end of the Acceptance Period, half the amount of the uncashed Settlement Checks will be redistributed by the Settlement Claims Administrator to all Opt-In Plaintiffs who properly cashed their checks during the Acceptance Period ("Paid Class Member"). The Settlement Claims Administrator will recalculate these amounts based on a pro-rata share of what each Paid Class Member previously received in relation to the Net Settlement Fund as described in Section 3.4(B)(1).

(F)     The other half of the amount of the uncashed Settlement Checks shall be placed into an interest-bearing escrow account maintained by the Settlement Claims Administrator and used as a Reserve Fund (as described in Section 3.4(B)(2)). The Settlement Claims Administrator shall promptly advise counsel for the Parties of (i) any Class Members who file late or deficient claims, (ii) any Class Members who dispute their allocation based on the settlement formula, or (iii) any other individuals who have come forward as individuals who were not identified as Class Members but who have a good-faith claim for participation. Settling Entities shall decide, after a good faith conference with Class Counsel, whether such individuals may participate in the Settlement. If accepted, such individuals shall be considered Opt-In Plaintiffs for all purposes under this Agreement. The Parties will confer in good faith in an effort to resolve any dispute relating to a Class Member's damage allocation and, if the Parties are unable to reach an agreement, the Settlement

18

Claims Administrator shall decide the dispute, and its decision will be final. It will be presumed that Settling Entities' records are accurate unless the Class Member provides conclusive documentary evidence otherwise.

(1)     Any individual who is accepted as a Class Member or whose allocation is permitted to be increased in accordance with this Section 3.1(F) by a date that is at least fourteen (14) days prior to the distribution of the Settlement Checks shall be paid from the Net Settlement Fund, and the calculations for all other Class Members shall be adjusted as necessary in accordance with Section 3.4.

(2)     Any individual who is accepted as a Class Member or whose allocation is permitted to be increased in accordance with this Section 3.1(F) after the date that is fourteen (14) days prior to the distribution of the Settlement Checks shall be paid from the Reserve Fund.  Additionally, any amount needed to satisfy any claim for relief allowed pursuant to Fed. R. Civ. P. 60(b)(1) or 60(d) shall be paid from the Reserve Fund.

(3)     Once settlement funds (the Net Settlement Fund and Reserve Fund) no longer remain to accept additional claims or adjust allocations, no further claims shall be accepted and no further changes to allocations shall be made. In no event shall the acceptance of any individuals as Class Members or the making of any changes to allocations in accordance with this Section 3.1(F) result in Settling Entities collectively being required to pay more than the Gross Settlement Amount.

(4)     Any amount remaining in the Reserve Fund not distributed to these individuals or used for defense costs after September 1, 2023, will be distributed to one or more of the following *cy pres* organization(s) as approved by the Court: (i) the Doe Fund; (ii) the Partnership for the Homeless; and/or (iii) any similar charitable organization that assists economically disadvantaged individuals in New York City in obtaining services, housing and/or employment opportunities, with a preference to be given to organizations whose geographic focus is within Manhattan, New York.

**3.2     Settlement Amounts Payable as Attorneys' Fees and Costs.**

(A)     At the Fairness Hearing and Motion for Final Approval, Class Counsel will petition the Court for an award of attorneys' fees of no more than one-third of the Gross Settlement Amount, and, in addition, for reimbursement of their actual litigation costs and expenses to be paid from the QSF. Settling Entities will not oppose this application. After depositing the Settlement Amount with the Settlement Claims

Administrator for the QSF, Settling Entities shall have no additional liability for Class Counsel's attorneys' fees and costs.

(B)     The substance of Class Counsel's application for attorneys' fees and costs is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the Settlement of the Litigation. The outcome of any proceeding related to Class Counsel's application for attorneys' fees and costs shall not terminate this Agreement or otherwise affect the Court's ruling on the Motion for Final Approval. Class Counsel shall have the right to appeal the Court's determination with respect to their application for attorneys' fees and costs. Upon the determination of any such appeal, fees and costs sought by Class Counsel but not awarded shall be returned to Class Members.

(C)     Subject to Court approval, Settling Entities agree to a "quick-pay" provision, pursuant to which attorneys' fees and costs will be paid to Class Counsel by the Settlement Claims Administrator from the Settlement Amount in the QSF from Installment I and Installment II within ten (10) days from the Court's award of attorneys' fees and expenses and contingent upon the dates for Defendants to fund Installment I and Installment II into the QSF as described in Section 3.1(B), above.

**3.3     Service Awards to Certain Plaintiffs.**

(A)     In return for services rendered to the Class Members, at the Fairness Hearing, Named Plaintiff Emanuel Preldakaj ("Service Award Plaintiff") will apply to the Court for $10,000.00 as a Service Award from the QSF. Settling Entities will not oppose such applications by the Service Award Plaintiff.

(B)     The application for Service Awards is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the Settlement of the Litigation.  The outcome of the Court's ruling on the application for Service Awards will not terminate this Agreement or otherwise affect the Court's ruling on the Motion for Final Approval or for Final Judgment and Dismissal. The amount of Service Awards sought but not awarded shall be returned to the Net Settlement Fund.

(C)     Within thirty (30) days of the Effective Date, the Settlement Claims Administrator shall mail the Court-approved Service Awards to the applicable individuals.

**3.4     Net Settlement Fund and Allocation to Class Members.**

(A)     The allocation to Class Members for Settlement Checks will be made from the Net Settlement Fund.

(B)     A Class Member's proportionate share of the Net Settlement Fund will be determined by the Settlement Claims Administrator pursuant to the following formula:

(1)     On or before August 3, 2021 Settling Entities will provide Class Counsel for settlement purposes only with information concerning Class Members' time and payroll records from November 10, 2014 through May 31, 2021 indicating the number of weeks worked during the Relevant Time Frame for each Class Member ("Class Records").  The Class Records will be produced to Class Counsel in the same or similar format to the sampling of time and payroll records for Class Members that Class Counsel received from the Monarch Defendants prior to and in anticipation of the Mediations. For the sake of clarity, nothing herein shall obligate Settling Entities to produce records which do not exist or which are otherwise not in their custody or control.  Class Counsel will then calculate each Class Members' expected total Settlement Amount based on a pro rata allocation from the applicable number of workweeks per Class Member from the Gross Settlement Amount. Each Class Member will be assigned an individual percentage amount of the Gross Settlement Amount based on their individual number of workweeks compared to the total amount of workweeks attributable to the entire Class. Each Class Member's percentage amount of the Gross Settlement Amount shall be assigned to the Net Settlement Fund and in order to compute that Class Member's share of the Net Settlement Fund (an "Individual Settlement Amount").  For example, if there are 10,000 total workweeks amongst all class members and an individual Class Member is allocated 500 workweeks, that Class Member's percentage of the Net Settlement Fund is 5%, and the Net Settlement Fund is $600,000.00, then that Class Member's Individual Settlement Amount would be $30,000.00 (subject to the applicable tax withholdings as described in Section 3.5.)  A Class Member shall only be entitled to receive that Class Member's percentage of the Net Settlement Fund as calculated above.  If any Class Member timely submits an Opt-out Statement, then the individual percentage amount of the Gross Settlement Amount for that Class Member will be evenly redistributed amongst all Opt-In Plaintiffs so the total of all Opt-In Plaintiffs' individual settlement amounts equals one hundred percent (100%) of the Net Settlement Fund. For example, if 6 Class Members submit timely Opt-out Statements and the total cumulative percentage of the Gross Settlement Amount for those 6 Class Members is 25%, then that 25% will be evenly redistributed amongst all Opt-In Plaintiffs, so that Individual Settlement Amounts will equal one hundred percent (100%) of the Net Distribution Amount.  Class Counsel represents that it will not use the Class Records for any purpose other than to effectuate the settlement contemplated by this Agreement.

(2)    **Reserve Fund:** The Settlement Administrator shall keep fifty percent (50%) of the amount from any uncashed checks as described in Sections 3.1(E) and 3.1(F) in an interest-bearing escrow account held by the Settlement Claims Administrator (the "Reserve Fund"). The Reserve Fund shall be used to settle any disputed claims made by (i) Class Members who wish to challenge their individual settlement amount as described in Section 2.7 and 3.1(F) to this Agreement, or (ii) individuals who did not receive the Class Notice or who did not provide a release of their FLSA claims. Any funds remaining in the Reserve Fund after July 1, 2023 that were not used to pay Class Members or used for defense, shall be distributed to one or more of the following *cy pres* organization(s) as approved by the Court: (i) the Doe Fund; (ii) the Partnership for the Homeless; and/or (iii) any similar charitable organization that assists economically disadvantaged individuals in New York City in obtaining services, housing and/or employment opportunities, with a preference to be given to organizations whose geographic focus is within Manhattan, New York.

(3)    **Non-Reversionary Settlement**: This is a non-revisionary Settlement. No excess, additional or unclaimed amounts from the Gross Settlement Amount, shall revert back to Settling Entities if the Settlement becomes Effective. Notwithstanding the above, if any amounts from the Gross Settlement Amount remain in the Reserve Fund after September 1, 2023, those funds shall be paid to one or more of the following *cy pres* organization(s) as approved by the Court: (i) the Doe Fund; (ii) the Partnership for the Homeless; and/or (iii) any similar charitable organization that assists economically disadvantaged individuals in New York City in obtaining services, housing and/or employment opportunities, with a preference to be given to organizations whose geographic focus is within Manhattan, New York.

**3.5    Tax Characterization.**

(A)    For tax purposes, fifty percent (50%) of payments to Class Members pursuant to Section 3.4(B)(1) shall be treated as back wages and fifty percent (50%) of such payments shall be treated as interest and/or liquidated damages. To the extent any Settlement payment results in any overpayment of unemployment benefits to any Plaintiff and/or Opt-In Plaintiff, the amount of any such overpayment shall be the responsibility of the individual Plaintiff and/or Opt-In Plaintiff, unless prohibited by law.

(B)    Payments treated as back wages pursuant to Section 3.5(A), or Service Awards pursuant to Section 3.3, shall be made net of all applicable employment taxes,

including, without limitation, federal, state and local income tax withholding and the employee share of the FICA tax, and shall be reported to the Internal Revenue Service ("IRS") and to the payee under the payee's name and social security number on an IRS Form W-2. Payments treated as interest and/or liquidated damages pursuant to Section 3.5(A) shall be made without withholding and shall be reported to the IRS and to the payee under the payee's name and social security number on an IRS Form 1099. Payments of attorneys' fees and costs pursuant to Section 3.2 shall be made without withholding and reported to the IRS and to the payee under the payee's name and taxpayer identification number, which each such payee shall provide for this purpose, on an IRS Form 1099.

(C)     Settling Entities shall cooperate with the Settlement Claims Administrator to timely arrive at an amount equal to the employer's share of the FICA tax and any federal and state unemployment tax due that are traditionally borne by employers, with respect to the amounts treated as wages pursuant to Section 3.4(B)(1) and shall promptly pay such amounts to the QSF. The Settlement Claims Administrator shall be responsible for making all reporting, deposits, and withholdings with respect to all amounts payable to Opt-In Plaintiffs required pursuant to any federal, state, or local tax law or regulation hereunder under the EIN of the QSF or the Settling Entities as required by applicable law.

(D)     The employee portion of all applicable income and payroll taxes will be the responsibility of the individual Opt-In Plaintiff receiving a Settlement Check or Service Award.

(E)     With respect to payments received pursuant to this Agreement that are not characterized as wage income and reported on an IRS Form W-2, the Named Plaintiffs and Opt-In Plaintiffs assume full responsibility for any and all federal, state and local taxes or contributions that may hereafter be imposed or required to be paid under any federal, state, or local law of any kind. The Parties believe, in good faith, that the tax treatment of all payments set forth in this Agreement is proper and in compliance with applicable IRS regulations. If, notwithstanding such good faith belief, the IRS or any other federal, state or local government, administrative agency or court determines that any individual Named Plaintiff, Opt-In Plaintiff and/or any Settling Entities are liable for any failure by any Named Plaintiff, Opt-In Plaintiff and/or Settling Entities to pay federal, state or local income, employment or payroll taxes with respect to any payment received pursuant to this Agreement that is not characterized as wage income and reported on an IRS Form W-2, Named Plaintiffs and Opt-In Plaintiffs shall hold Settling Entities harmless and indemnify Settling Entities from any payments the Settling Entities may be required to make (including any payments for interest and penalties) to any taxing authority resulting from the issuance of an IRS Form 1099

23

and any Named Plaintiff's and/or Opt-In Plaintiff's failure to pay any taxes that any such individual or entity owes related to said income.

(1)    In the event that the IRS or any other federal, state or local government, administrative agency or court (collectively, a "Tax Authority") determines that any individual Named Plaintiff, Opt-In Plaintiff and/or any Settling Entities are liable for any failure by any Named Plaintiff, Opt-In Plaintiff and/or Settling Entities to pay federal, state or local income, employment or payroll taxes with respect to any payment received pursuant to this Agreement that is not characterized as wage income and reported on an IRS Form W-2 under the applicable provisions of this Section 3.5(E) (a "Tax Claim"), then the Settling Entities shall give written notice of such Tax Claim to Class Counsel within seven (7) days of such determination. Settling Entities and/or Defendants' Counsel shall provide Named Plaintiffs, Opt-In Plaintiffs and/or Class Counsel with a reasonable opportunity to cure such Tax Claim before making a claim for indemnity pursuant to this indemnification provision. Settling Entities and/or Defendants' Counsel shall reasonably cooperate with Named Plaintiffs, Opt-In Plaintiffs and/or Class Counsel, to the extent possible, to minimize the costs associated with this indemnity.

(2)    With respect to payments received pursuant to this Agreement that are characterized as professional fees and costs, Class Counsel shall assume responsibility of any and all federal, state and local taxes or contributions which may hereafter be imposed or required to be paid under any federal, state, or local law of any kind. The Parties believe, in good faith, that the tax treatment of all payments set forth in this Agreement is proper and in compliance with applicable IRS regulations. If, notwithstanding such good faith belief, the IRS or any other federal, state or local government, administrative agency or court determines that Class Counsel is liable for any federal, state or local taxes or contributions with respect to any payment received pursuant to this settlement that is characterized as professional fees and costs, Class Counsel shall be responsible for said payments and shall hold Settling Entities harmless for said payments.

(F)    Other than as set forth above, Settling Entities will not make from the payment to each Named Plaintiff and Opt-In Plaintiff any deductions, withholdings, or additional payments, including without limitation, medical or other insurance payments or premiums, employee 401(k) contributions or matching employer contributions, wage garnishments, or charity withholdings, and entry of the Final Approval Order and Judgment by the Court shall be deemed authority not to make such deductions, withholdings, or additional payments. Any amount paid to Named Plaintiffs and Opt-In Plaintiffs shall not create any credit or otherwise affect the

24

calculation of any deferred compensation, benefit, pension, or other compensation or benefit plan provided by Settling Entities. Plaintiffs, on behalf of the Class Members and the Opt-In Plaintiffs, acknowledge and agree that they have not relied upon any advice from Settling Entities as to the taxability of the payments received pursuant to this Agreement.

(G)    The Settlement Claims Administrator shall handle all tax reporting with respect to the payments made pursuant to this Agreement, and, regardless of any provision in this Agreement, shall report the payments in accordance with applicable law.

## IV.   RELEASE

### 4.1   Release of Claims.

By operation of the entry of the Final Approval Order and Judgment, and except as to such rights or claims as may be created by this Agreement,

(A)    Each individual Rule 23 Class Member who does not timely and validly opt-out pursuant to this Agreement forever and fully releases, on behalf of himself/herself, his/her heirs, spouses, executors, representatives, successors, assigns and attorneys, the Released State Law Claims against Settling Entities and Releasees.  The release of the Released State Law Claims pursuant to this Section 4.1(A) shall be effective and binding upon the Effective Date.

(B)    In addition, each individual Class Member who negotiates the Settlement Check shall forever and fully release, on behalf of himself/herself, his/her heirs, spouses, executors, representatives, successors, assigns and attorneys, both the Released State Law Claims and the Released Federal Law Claims against Settling Entities and Releasees.  The release of the Released Federal Law Claims pursuant to this Section 4.1(B) shall be effective as of the date that the individual Class Member negotiates his/her Settlement Check.

(C)    The Named Plaintiff has separate claims which are not released in connection with this Agreement. Specifically, the Named Plaintiff has brought claims against the Monarch Defendants for wrongful termination and discrimination, which claims are currently pending before the New York City Commission on Human Rights. The only claims the Named Plaintiff is releasing in connection with this Agreement are those wage and hour claims asserted in the Litigation. Additionally, the Named Plaintiff does not waive any right to file an administrative charge with the Equal Employment Opportunity Commission ("EEOC"), subject to the condition that he agrees not to seek, or in any way obtain or accept, any monetary award, recovery or settlement therefrom.

(1)     Named Plaintiff, who is age 40 or over at the time he is presented with this Agreement, shall have twenty-one (21) calendar days to consider the Agreement, and seven (7) days to revoke his entitlement to a Service Award and the limited release of claims in this Section 4.1(C) following his execution of the Agreement, and such provisions shall not be effective or enforceable as to such Named Plaintiff until the expiration of this seven-day revocation period. Any revocation by Named Plaintiff and the release of claims in this Section 4.1(C) shall pertain solely to the payment of his Service Award and the release set forth in this Section 4.1(C). Upon such revocation, such Named Plaintiff shall not be paid any Service Award, and shall not release claims under this Section 4.1(C), but this Agreement shall otherwise remain valid and enforceable in all other respects, and such Named Plaintiff shall continue to be considered a Class Member for purposes of participating in the Settlement and releasing the Released State Law Claims and the Released Federal Law Claims. Further, Named Plaintiff is hereby advised to consult with an attorney of his choosing before executing this Agreement, and represents that he has done so with Class Counsel.

(2)     Nothing in this Release shall prohibit or restrict Named Plaintiff from: (i) providing information to, or otherwise assisting in, an investigation by Congress, the EEOC, the Securities and Exchange Commission ("SEC") or any other federal regulatory or law enforcement agency or self-regulatory organization ("SRO"); (ii) complying with a lawful subpoena or other legal process, subject to the terms of the Agreement; or (iii) engaging in any conduct that is required or protected by law.

(3)     For the avoidance of doubt, nothing in this Release or this Agreement shall prohibit or restrict the Settling Entities or the Releasees (i) from providing information to, or otherwise assisting in, any investigation or proceeding with any appropriate federal, state, or local government agency enforcing discrimination laws; (ii) from cooperating with any such agency in its investigation, concerning any claim for wrongful termination and discrimination relative to the Named Plaintiff, including those claims identified in 4.1(C), above, (iii) complying with a lawful subpoena or other legal process, subject to the terms of the Agreement; or (iv) engaging in any conduct that is required or protected by law.

(D)     Except as provided in this Agreement, Class Counsel and Named Plaintiff, on behalf of the Class Members individually and collectively, hereby irrevocably and unconditionally release, acquit, and forever discharge any claim that he, she or they may have against Settling Entities for attorneys' fees or costs associated with Class Counsel's representation of the Named Plaintiffs and Class Members in the Litigation. Class Counsel further understands and agrees that any fee payments

26

approved by the Court will be the full, final and complete payment of all attorneys' fees and costs associated with Class Counsel's representation in the Litigation.

4.2 **Effect of Failure to Cash a Settlement Check.** Upon the entry of the Final Approval Order and Judgment, (a) each Class Member who has not filed a valid and timely Opt-out Statement shall have released all applicable Released State Law Claims as defined in Sections 1.46 and 4.1(A) of the Settlement Agreement, and (b) each Class Member who has cashed his or her Settlement Check shall have released all applicable Released State Law Claims and Released Federal Law Claims as defined in Sections 1.45, 1.46, 4.1(A) and 4.1(B) of the Settlement Agreement; provided, however, that any Class Member who (i) did not affirmatively opt into the FLSA Class as defined in Section 1.35 and (ii) did not cash his or her Settlement Check,  shall not release the Released Federal Law Claims.

4.3 **Non-Admission of Liability.** Nothing relating to this Agreement, or any communications, papers, or orders related to the Settlement, shall be cited to as, construed to be, admissible as, or deemed an admission by Settling Entities and/or Releasees of any liability, culpability, negligence, or wrongdoing toward the Plaintiffs, the Class Members, or any other person, and Settling Entities and/or Releasees specifically disclaim any liability, culpability, negligence, or wrongdoing toward the Plaintiffs, the Class Members, or any other person, or that class or collective action certification is appropriate in this or any other matter. Each of the Parties has entered into this Stipulation with the intention to avoid further disputes and litigation with the attendant inconvenience, expenses, and contingencies. This Agreement, and any communications, papers, or orders related to the Settlement, may not be cited to, used, or admitted as evidence of liability or that class or collective action certification is appropriate. There has been no determination by any Court as to the merits of the claims asserted by Plaintiffs against Settling Entities and/or Releasees or as to whether a class or collective should be certified, other than for settlement purposes only. Furthermore, nothing in this Agreement shall be considered any form of waiver of any releases by Settling Entities and/or Releasees.

4.4 **Certification.**  The Parties stipulate, for settlement purposes only, to the certification by the Court of a Rule 23 class as to all claims relating to Class Members employed in New York State which were asserted in the Complaint pursuant to federal and state law other than the claims arising under Section 216(b) of the FLSA, and further stipulate, for settlement purposes only, to the certification by the Court of a collective action as to all claims asserted in the Complaint arising under the FLSA. Settling Entities' stipulation to these Settlement certifications shall in no way be considered any form of waiver of any form of alternative dispute resolution.  Settling Entities' stipulation to these Settlement certifications shall not be construed as an admission or acknowledgment of any kind that any class should be certified or given class or collective action treatment.  The Rule 23 Class may be provisionally certified as a class action pursuant to Fed. R. Civ. P. 23 for the purposes of the monetary relief provide in this Agreement.

## V.      INTERPRETATION AND ENFORCEMENT

**5.1      Cooperation Between the Parties; Further Acts.** The Parties shall reasonably cooperate with each other and shall use their reasonable best efforts to obtain the Court's approval of this Agreement and all of its terms. Each Party, upon the request of any other Party, shall perform such further acts and execute and deliver such other documents, including confirmatory discovery, as are reasonably necessary to carry out the provisions of this Agreement.  Class Counsel represents that it will not use such other documents, including documents and/or information obtained during confirmatory discovery, for any purpose other than to effectuate the Settlement contemplated by this Agreement.

**5.2      Non-Interference with Settlement.** Pending the Court's decision on preliminary and final approval of the Settlement and entry of the Court's Final Approval Order and Judgment, Plaintiffs and all Class Members and anyone acting on behalf of any Class Member shall be barred and enjoined from: (a) further litigation in this Litigation; (b) filing, or taking any action directly or indirectly, to commence, prosecute, pursue or participate on a class or collective action basis any action, claim or proceeding against Settling Entities or Releasees in any forum in which any of the claims released by this Agreement are asserted, or which in any way would prevent any such claims from being extinguished; or (c) seeking, whether on a conditional basis or not, certification of a class or collective action that involves any such claims.

**5.3      No Assignment.** Class Counsel and Named Plaintiff, on behalf of the individual Class Members, represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Litigation, or any related action.

**5.4      Entire Agreement.** This Agreement and its exhibits constitute the entire agreement between the Parties with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the Parties shall be deemed merged into this Agreement.

**5.5      Binding Effect.** This Agreement shall be binding upon the Parties and, with respect to the Named Plaintiffs, their spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys, and assigns.

**5.6      Arms' Length Transaction; Materiality of Terms.** The Parties have negotiated all the terms and conditions of this Agreement at arms' length. All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement, unless otherwise expressly stated.

**5.7**     **Captions.** The captions or headings of the Sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

**5.8**     **Construction.** The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties. Each Party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any Party by virtue of draftsmanship.

**5.9**     **Governing Law.** This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of New York, without regard to choice of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

**5.10**     **Continuing Jurisdiction.** The Court shall retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the Settlement contemplated thereby.

**5.11**     **Waivers, etc. to Be in Writing.** No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties and then only to the extent set forth in such written waiver, modification or amendment, subject to any required Court approval. Any failure by any Party to insist upon the strict performance by the other Party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such Party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

**5.12**     **Counterparts.** The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if all Parties had signed the same instrument.

**5.13**     **Signatures of Named Plaintiff.** This Agreement is valid and binding if signed by Settling Entities' representative(s) and the Named Plaintiff.

**5.14**     **Facsimile and Scanned Signatures.** Any signature made and transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the Party whose counsel transmits the signature page by facsimile or email.

*[remainder of page intentionally left blank; signatures next page]*

1404146.1

**IN WITNESS WHEREOF**, the Parties hereto have caused the Settlement to be executed, and this Settlement is AGREED TO.

DATED: ___7 - 11___, 2021          By: _____

                                         EMANUEL PRELDAKAJ
                                         Named Plaintiff and Class
                                         Representative


DATED: _____, 2021          By: _____

                                         Authorized Representative
                                         The Monarch Condominium.
                                         Defendant


DATED: _____, 2021          By: _____

                                         Authorized Representative
                                         The Monarch Condominium
                                         Board of Managers
                                         Defendant


DATED: _____, 2021          By: _____

                                         Authorized Representative
                                         LaSala Management, Inc.
                                         Defendant

30