UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EMANUEL PRELDAKAJ, on behalf of himself and all
others similarly situated,

Index No.: 20-cv-09433(VSB)

                    Plaintiff,

        v.

THE MONARCH CONDOMINIUM, THE MONARCH
CONDOMINUM BOARD OF MANAGERS and
LASALA MANAGEMENT, INC.

                    Defendants.

# THE PARTIES' JOINT MEMORANDUM OF LAW IN SUPPORT
## OF FINAL APPROVAL OF SETTLEMENT

Brett R. Gallaway, Esq.
Lee S. Shalov, Esq.
Jason S. Giaimo, Esq.
McLAUGHLIN & STERN, LLP
260 Madison Avenue
New York, New York 10016
212-448-1100

*Attorneys for Plaintiff*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND.................................................. 4

    A.  Overview of the Litigation.................................................................... 4

    B.  Discovery and Settlement Negotiations.............................................. 5

    C.  The Parties' Joint Motion for Preliminary Approval ........................ 6

SUMMARY OF SETTLEMENT TERMS................................................................. 7

    A.  The Settlement Fund ........................................................................... 7

    B.  Class Members.................................................................................... 7

    C.  Releases............................................................................................... 8

    D.  Allocation Formula ............................................................................ 8

    E.  Attorneys' Fees, Costs and Service Awards ...................................... 9

    F.  Settlement Claims Administration...................................................... 9

ARGUMENT ............................................................................................................ 10

    A.  The Settlement Class Meets the Legal Standards for Class Certification ....................... 10

    B.  The Settlement is Procedurally and Substantively Fair, Reasonable, and Adequate and Should be Approved in All Respects ........................ 10

        1.  The Settlement is Procedurally Fair.......................................... 11

        2.  The Settlement is Substantively Fair ........................................ 13

            i.    Litigation Through Trial Would Be Complex, Costly, And Long (*Grinnell* Factor 1) ............................................ 14

            ii.    The Reaction of the Class Has Been Positive (*Grinnell* Factor 2) ................... 15

            iii.   Discovery Has Advanced Far Enough to Allow The Parties To Resolve The Case (*Grinnell* Factor 3) .............................................. 16

            iv.   Plaintiff Would Face Substantial Risks If The Case Proceeded (*Grinnell* Factors 4 and 5).................................................. 17

   v. Maintaining The Class Through Trial Would Be Difficult
    (*Grinnell* Factor 6) ............................................................................ 18

   vi. The Settling Entities' Ability To Withstand A Greater Judgment Is
    Not Determinative (*Grinnell* Factor 7) ............................................. 19

   vii. The Settlement Fund Is Substantial in Light of the Best Possible Recovery
    and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9) ..................... 20

 C. The Plan of Allocation is Fair and Reasonable ................................................. 21

 D. Approval of the Settlement of the FLSA Class Members' Claims is Appropriate .......... 22

CONCLUSION ...................................................................................................... 23

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Ansoumana v. Gristede's Operating Corp.*,
   201 F.R.D. 81 (S.D.N.Y. 2001) ................................................................................ 22

*Ballinger v. Advance Magazine Publrs., Inc.*,
   2014 U.S. Dist. LEXIS 179538 (S.D.N.Y. Dec. 29, 2014) ..................................... 20

*Beckman v. KeyBank, N.A.*,
   293 F.R.D. 467 (S.D.N.Y. 2013) .............................................................................. 22

*Bellifemine v. Sanofi-Aventis U.S. LLC*,
   2010 U.S. Dist. LEXIS 79679 (S.D.N.Y. Aug. 6, 2010) ........................................ 13

*Cagan v. Anchor Sav. Bank FSB*,
   1990 U.S. Dist. LEXIS 11450 (E.D.N.Y. May 22, 1990) ....................................... 20

*Capilupi v. People's United Fin., Inc.*,
   2018 U.S. Dist. LEXIS 167550 (E.D.N.Y. Sept. 27, 2018).............................. 14, 17

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974)................................................................................ passim

*D'Amato v. Deutsche Bank*,
   236 F.3d 78 (2d Cir. 2001)........................................................................................ 11

*Flores v. Mamma Lombardi's of Holbrook, Inc.*,
   104 F. Supp. 3d 290 (E.D.N.Y. 2015) ...................................................................... 16

*Frank v. Eastman Kodak Co.*,
   228 F.R.D. 174 (W.D.N.Y. 2005)............................................................................. 20

*Garcia v. Pancho Villa's of Huntington Vill., Inc.*,
   2012 U.S. Dist. LEXIS 144446 (E.D.N.Y. Oct. 4, 2012)........................................ 18

*Goldberger v. Integrated Res., Inc.*,
   209 F.3d 43 (2d Cir. 2000)........................................................................................ 11

*In re American Banknote Holographics*,
   127 F. Supp. 2d 418 (S.D.N.Y. 2001)...................................................................... 21

*In re Austrian & German Bank Holocaust Litig.*,
   80 F. Supp. 2d 164 (S.D.N.Y. 2000)............................................................ 14, 16, 19, 20

*In re EVCI Career Colleges Holding Corp. Sec. Litig.*,
   2007 U.S. Dist. LEXIS 57918 (S.D.N.Y. July 27, 2007) ........................................ 12

*In re Metlife Demutualization Litig.*,
   689 F. Supp. 2d 297 (E.D.N.Y. Feb. 12, 2010) ................................................................ 12, 20

*In re Paine Webber Ltd. P'ships Litig.*,
   147 F.3d 132 (2d Cir. 1998) ..................................................................................................... 11

*In re Visa Check/Mastermoney Antitrust Litig.*,
   297 F. Supp. 2d 503 (E.D.N.Y. 2003) ..................................................................................... 21

*Johnson v. Brennan*,
   2011 U.S. Dist. LEXIS 105775 (S.D.N.Y. Sept. 16, 2011) ..................................................... 18

*Karic v. Major Auto. Cos.*,
   2016 U.S. Dist. LEXIS 57782 (E.D.N.Y. Apr. 27, 2016) ................................................ 14, 20

*Kochilas v. Nat'l Merch. Servs.*,
   2015 U.S. Dist. LEXIS 135553 (E.D.N.Y. Oct. 2, 2015) ................................................. 13, 16

*Lizondro-Garcia v. Kefi LLC*,
   2014 U.S. Dist. LEXIS 143165 (S.D.N.Y. Oct. 7, 2014) ................................................. 10, 22

*Maley v. Del Glob. Techs. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002) ...................................................................................... 15

*McKenna v. Champion Int'l Corp.*,
   747 F.2d 1211 (8th Cir. 1984) ................................................................................................. 22

*Myers v. Hertz Corp.*,
   624 F.3d 537 (2d Cir. 2010) ..................................................................................................... 19

*Newman v. Stein*,
   464 F.2d 689 (2d Cir. 1972) ..................................................................................................... 20

*Sewell v. Bovis Lend Lease LMB, Inc.*,
   2012 U.S. Dist. LEXIS 53556 (S.D.N.Y. Apr. 20, 2012) ........................................................ 17

*Slomovics v. All for a Dollar, Inc.*,
   906 F. Supp. 146 (E.D.N.Y. 1995) .......................................................................................... 15

*Spann v. AOL Time Warner Inc.*,
   2005 U.S. Dist. LEXIS 10848 (S.D.N.Y. June 7, 2005) .......................................................... 11

*Toure v. Amerigroup Corp.*,
   2012 U.S. Dist. LEXIS 110300 (E.D.N.Y. Aug. 6, 2012) ........................................................ 11

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
   396 F.3d 96 (2d Cir. 2005) ....................................................................................................... 11

*Westerfield v. Washington Mut. Bank*,
    2009 U.S. Dist. LEXIS 54553 (E.D.N.Y. June 26, 2009) ....................................... 12

*Weston v. TechSol, LLC*,
    2018 U.S. Dist. LEXIS 166574 (E.D.N.Y. Sept. 26, 2018) .................................... 11

*Willix v. Healthfirst*,
    2011 U.S. Dist. LEXIS 21102 (E.D.N.Y. Feb. 18, 2011) ....................................... 16

*Wollinsky v. Scholastic, Inc.*,
    900 F. Supp. 2d 332 (S.D.N.Y. 2012) .................................................................... 22

*Yuzary v. HSBC Bank USA, N.A.*,
    2013 U.S. Dist. LEXIS 144327 (S.D.N.Y. Oct. 2, 2013) ....................................... 13

**Statutes**

Fair Labor Standards Act ............................................................................................ passim

Fed. R. Civ. P. 23 .......................................................................................... 7, 10, 19, 22

New York Labor Law .................................................................................................. 3, 4

**Other Authorities**

4 Alba Conte & Herbert Newberg, Newberg On Class Actions (4th ed. 2002) ........................... 11

## PRELIMINARY STATEMENT

Plaintiff and the Settling Entities are pleased to present to the Court for final approval a $912,500 Settlement for the benefit of all non-supervisory, hourly-paid non-exempt building service staff members who worked at The Monarch Condominium at any time from November 10, 2014 through the date of the Preliminary Approval Order – November 15, 2021.[1]  By this Joint Motion for Judgment and Final Approval, the Parties seek an Order: (a) certifying the Classes for settlement purposes; (b) approving the Settlement and the Settlement Agreement as final, fair, reasonable, and adequate; (c) confirming that the requirements of the Class Action Fairness Act of 2005, 28 U.S.C. § 1711 *et seq*., have been satisfied; and (d) entering judgment in accordance with the Settlement Agreement.  As demonstrated below, the Settlement satisfies all criteria for final approval.

Indeed, as described in the accompanying Declaration of Brett R. Gallaway (the "Gallaway Dec."), the Settlement—which will provide substantial all-cash payments to non-supervisory, non-exempt hourly employees for wages they allegedly did not receive while working at the Settling Entities' building—was negotiated only after extensive investigation, discovery, and three separate full-day mediations engaged in by Class Counsel.  These efforts included, *inter alia*, review of hundreds of pages of the Settling Entities' documents and payroll records; motion practice concerning a stay of the proceedings pending mandatory mediation compelled by the Class Members' collective bargaining agreement; communicating with numerous Class Members regarding their work experiences for the Monarch Defendants and obtaining multiple opt-in declarations regarding the same. Moreover, Class Counsel analyzed and prepared a detailed individual damages analysis utilizing each Class Member's time and payroll records in the

---

[1]        Unless otherwise defined, all capitalized terms shall have the same meaning as used in the Joint Stipulation of Settlement and Release (a/k/a the "Settlement Agreement") (Dkt. No. 33-1).

calculation of Class Member damages. The Settlement was also overseen by an experienced wage-and-hour mediator, Robin Gise, Esq. (the "Mediator"), and took place over three separate full-day and arm's-length mediation sessions at which Plaintiff and the Settling Entities narrowed and ultimately resolved the significant differences they had regarding the claims and defenses at issue in the litigation.  Accordingly, the Settlement satisfies the indicia for "procedural fairness" under controlling authority.

The Settlement also meets the requirements for finding "substantive fairness."  Far from a "run-of-the-mill" FLSA collective action, this litigation involved complex issues on a number of fronts, including the certifiability of "schedule-based" claims involving 35 employees with purportedly varied work experiences, and the Court's jurisdiction to hear wage claims by employees arguably subject to collective bargaining agreements that may have required wage disputes to be arbitrated.  The litigation also presented innumerable risks at the time the Settlement was reached, including the risk that the Court would ultimately deny Plaintiff's anticipated motion for collective and class certification; that the Settling Entities would seek to decertify any certified class on the grounds that Class Members performed their duties differently depending on where they worked, who supervised them, and other factors; that factual disputes would preclude summary judgment, thereby resulting in a fact-intensive trial; and that the trier of fact would ultimately determine that Plaintiff was paid for all hours worked and was not entitled to any further compensation.

As described below,[2] the $912,500 recovery is substantial in light of the best possible recovery in and the attendant risks of the Litigation.  The recovery here is extremely favorable when compared to the best possible outcome achievable had Plaintiff succeeded on all his claims

---

[2]     *See* Argument, Part B.2.vii, discussing *Grinnell* Factors 8 and 9.

at trial, *to wit*, $4,129,193 (a sum that assumed 10-hours of uncompensated overtime work every week for the entirety of each Class Members' employment), punitive damages over the 6-year NYLL statutory period, full WTPA penalties for alleged NYLL § 195.1 and § 195.3 violations and 9% interest over the entirety of the Class period. The recovery is even more impressive when compared to the $1,726,517 in alleged compensatory damages sustained by Class Members (under a 10-hour unpaid weekly overtime analysis), which represents nearly 53% of all possible Class Members' compensatory damages if they were successful on all their claims at trial, a truly excellent result under the circumstances.  Indeed, out of 35 total Class Member, 4 Class Members can expect to receive between $100 and $999 from the Net Settlement Fund; 12 Class Members can expect to receive between $1,000 and $9,999 from the Net Settlement Fund, and 19 Class Members can expect to receive <u>more than $10,000</u> from the Net Settlement Fund. Moreover, the average projected Class Member award projection is $16,752.02. Confirming the outstanding nature of the recovery, not one Class Member has opted out or registered an objection to the Settlement.

In addition, and as set forth in the accompanying Declaration of Stephen P. Pischl (the "Pischl Dec."), on November 17, 2021, more than ninety days in advance of this Court's anticipated fairness hearing, pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1711 *et seq*., the Settling Entities served appropriate notices of the Settlement to the United States Attorney General and the New York Attorney General, giving notice of the date and time of the scheduled fairness hearing on the parties' settlement. To date, the Settling Entities have not received any indication from the United States Attorney General, the New York Attorney General, or any other person or entity, that any of the recipients of the Settling Entities' notices intend to

participate at the hearing, or that they would object to the Settlement Agreement reached between the parties.

For the foregoing, reasons, as demonstrated more fully below, the Parties respectfully submit that the Settlement is fair and reasonable and should be approved in all respects.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.    Overview of the Litigation

On November 10, 2020, Plaintiff filed a class and collective action Complaint alleging, *inter alia*, that the Settling Entities violated the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* (the "FLSA"), and New York Labor Law, Article 6, §§ 190 *et seq.*, Article 19, §§ 650 *et seq.* (the "NYLL"), and 12 NYCRR § 142-2, by denying straight and overtime compensation to Plaintiff by paying him according to their scheduled shifts rather than the actual time he spent clocked in and performing work-related duties and asking Plaintiff and all other Class Members to perform work on their days off or for several hours per day outside of the parameters of their regularly scheduled shift. *See* Dkt. No. 1. After filing the Complaint, the parties agreed to stay the Action pending a mandatory mediation pursuant to Article XIX § 47 of the Class Members' collective bargaining agreement. *See* Dkt. Nos. 14-15. This stay was granted until March 21, 2021, and Defendants did not respond to the Complaint pending the outcome of the mediation.[3] In anticipation of the mediation, Class Counsel pushed forward aggressively with informal discovery. In connection with these efforts, Class Counsel received and reviewed hundreds of pages of documents from the Monarch Defendants, including collective bargaining agreements and Class Member time and payroll records. Class Counsel also spoke with a number of Class Members regarding their work experiences at the Monarch Condominium and secured six detailed declarations from Class

---

[3]    This stay was further extended twice pending the Parties ongoing mediations. *See* Dkt. Nos. 16-19.

Members attesting to and supporting Named Plaintiff's allegations in the Complaint. *See* Gallaway Dec., ¶ 6. Moreover, Class Counsel analyzed and prepared a detailed individual damages analysis utilizing each Class Member's time and payroll records in the calculation of Class Member damages. *See id.*

**B.**   **Discovery and Settlement Negotiations**

Contemporaneous with these efforts in informal discovery and damage analysis, and pursuant to the terms of the Collective Bargaining Agreement, Class Counsel and counsel for the Monarch Defendants participated in mandatory mediation to explore settlement of the claims asserted in the Complaint.   Robin Gise, Esq., an experienced and well-respected employment wage-and-hour mediator, was selected as mediator in accordance with the mediation provisions of the Collective Bargaining Agreement.   *See id*, ¶ 9. In anticipation of mediation, Class Counsel consulted extensively with EmployStats, an economics and statistics expert, to assist in the calculation of Plaintiff's damages.   Specifically, Class Counsel forwarded EmployStats hundreds of punch detail reports and pay stubs received from The Monarch Defendants during the litigation. EmployStats then engaged in the extremely laborious and time-consuming task of "cleaning" those records through a statistical software program called STATA.   STATA allowed EmployStats to present each employee's punch detail and scheduling information in rows and columns from which it generated spreadsheets comparing the amount of time an employee was punched in during a particular day with the duration of the employee's shift.   The difference in those figures multiplied by the employee's hourly or overtime rate of pay represented the employee's unpaid compensatory and overtime wages, which EmployStats calculated for each hourly employee for whom it had records.   *See id*, ¶ 10.

Counsel thereafter submitted to the Mediator comprehensive mediation statements outlining the claims in the Litigation, the risks associated with those claims and the viability of the Monarch Defendants' defenses. *See id*, ¶ 11.

The first of three all-day mediation sessions was held on March 24, 2021. *See* Gallaway Dec., ¶ 12. The Parties were not able to reach a resolution during the first mediation and scheduled a second all-day mediation which occurred on April 13, 2021. *See id*. In the interim, Class Counsel was actively engaged with the Mediator to discuss updates and settlement strategy. Like the first mediation, the second mediation was also unsuccessful, but the Parties agreed to continue good faith negotiations during a third and final all-day mediation which took place on April 23, 2021. *See id*. Again, during this interval and thereafter, Class Counsel was actively engaged with the Mediator, Named Plaintiff and numerous Class Members, all of whom took active involvement in the mediation process. Despite three full-day mediations, the parties were still not able to reach a resolution during the April 23rd mediation and continued to negotiate with the assistance of the Mediator for several days thereafter and finally reached an agreement as to material terms of a settlement in the amount of $912,500 on April 30, 2021, after a mediator's proposal.

Over the next several months, Counsel for all Parties negotiated the terms of the Agreement and its accompanying exhibits. These terms were highly contested and required numerous follow-up sessions with Ms. Gise and extensions to submit the Agreement to the Court. *See* Gallaway Dec., ¶ 13.; *see also* Dkt. Nos. 25-33.

## C.   **The Parties' Joint Motion for Preliminary Approval**

On July 12, 2021, the Parties filed a Joint Motion for Preliminary Approval of the Settlement. *See* Dkt. Nos. 31-33.  On November 15, 2021, the Court took the first step in the settlement approval process and preliminarily approved the Settlement, conditionally certified the proposed Class; appointed McLaughlin & Stern, LLP as Class Counsel; approved the proposed

notice and directed that the Notice be sent to the Class Members, and set a date for the final fairness

hearing (the "Preliminary Approval Order").  *See* Dkt. No. 35.[4]

## SUMMARY OF SETTLEMENT TERMS

### A.      The Settlement Fund

Under the Settlement Agreement, the Settling Entities have agreed to pay into a Qualified

Settlement Fund the Gross Settlement Amount of $912,500.  *See id*.  From the Gross Settlement

Amount will be deducted: (i) settlement administration fees, costs, and expenses, including but not

limited to, the Settlement Claim Administrator's fees and costs, and costs of all notices; (ii) Court-

approved attorneys' fees and costs for Class Counsel; (iii) Court-approved service awards to the

Named Plaintiff; and (iv) a special reserve fund as described in Sections 1.49, 3.1(F) and 3.4(B)(2)

of the Settlement Agreement. *See id*.  The amount remaining after these deductions, called the Net

Settlement Fund, will be distributed to eligible Class Members.  *See id*.  The employer's share of

payroll taxes shall be paid by the Settling Entities in addition to the Gross Settlement Amount.  *See*

*id*.

### B.      Class Members

Class Members are comprised of 35 individuals consisting of: (i) all FLSA Class Members

(who are current and former non-supervisory, non-exempt hourly building service staff members

who worked at The Monarch Condominium during the period from November 10, 2017, through

November 15, 2021 (the "Preliminary Approval Date")); and (ii) Rule 23 Class Members (who are

individuals employed in New York State and who worked as non-supervisory, non-exempt hourly

---

[4]      On November 15, 2021, the Parties submitted a joint letter request to adjourn the Final Fairness Hearing date which was so ordered by Your Honor that same day and the Final Fairness Hearing was scheduled to proceed on March 24, 2022 at 4:00pm. *See* Dkt. Nos. 36-37.

paid building service staff members at The Monarch Condominium during the period from November 10, 2014, through November 15, 2021. *See id*.

## C.   <u>Releases</u>

All Class Members who do not exclude themselves from the Settlement will release the Settling Entities and their related parties from all Released State Law Claims, which includes claims for failure to pay minimum wage, failure to pay overtime, failure to pay for all hours worked, failure to provide meal and rest periods, failure to timely pay final wages, failure to reimburse for business expenses, and/or failure to furnish accurate wage statements or other notices, and any and all claims for recovery of compensation, overtime pay, minimum wage, premium pay, interest, and/or penalties.  *See id.*  All Class Members who receive and cash Settlement Checks will release the Settling Entities and their related parties from all Released Federal Law Claims, which includes all claims for any type of relief under the FLSA.  *See id.*

## D.   <u>Allocation Formula</u>

Under the allocation formula, the Settling Entities have provided Class Counsel with information showing the number of weeks worked by each identified Class Member for the period between November 10, 2014 through May 31, 2021 ("Class Records").  Each Class Member will be assigned an individual percentage amount of the Gross Settlement Amount based on the number of weeks they worked over the period between November 10, 2014 through May 31, 2021, divided by the number of total weeks worked by all class members over the same time period.  Each Class Member's percentage amount of the Gross Settlement Amount shall be assigned to the Net Settlement Fund and in order to compute that Class Member's share of the Net Settlement Fund (an "Individual Settlement Amount").  For example, if a Class Member's percentage of the Full Recovery Amount is 5.00%, and the Net Distribution Amount is $600,000.00, then that Class Member's Individual Settlement Amount would be $30,000.00 (subject to the applicable tax

withholdings). A Class Member shall only be entitled to receive that Class Member's percentage of the Net Settlement Fund as calculated above. If any Class Member timely submits an Opt-out Statement (which no Class Member did), then the individual percentage amount of the Gross Settlement Amount for that Class Member will be evenly redistributed amongst all Settlement Class Members so the total of all Settlement Class Members' individual settlement amounts equals one hundred percent (100%) of the Net Settlement Fund. For example, if five Class Members submit timely Opt-out Statements and the total cumulative percentage of the Gross Settlement Amount for those five Class Members is 5%, then that 5% will be evenly redistributed amongst all Opt-In Plaintiffs, so that Individual Settlement Amounts will equal one hundred percent (100%) of the Net Distribution Amount. The plan of allocation does not treat any Class Member better or worse than any other employee and, instead, is based entirely on objective mathematical calculations derived from time reports and pay records.

**E.      Attorneys' Fees, Costs and Service Awards**

Contemporaneously herewith and at the final fairness hearing, Class Counsel seek an award of attorneys' fees of no more than one-third of the Gross Settlement Amount for the work they performed, the risks they confronted and the result they achieved on behalf of the Class. Class Counsel will also request reimbursement of their litigation costs and expenses to be paid from the Qualified Settlement Fund as well as the fee for Analytics, LLC for services rendered in connection with claims administration. In addition, the Named Plaintiff will apply for a $10,000 service award.

**F.      Settlement Claims Administration**

The Parties selected, and the Court approved, Analytics, LLC ("Analytics") as the Settlement Claims Administrator to administer the Settlement. *See* Dkt. No. 35. On December 8, 2021, Analytics mailed the Court-approved Notices to Class Members whose names and addresses

were provided by the Settling Entities.  *See* Declaration of Jeff Mitchell dated February 24, 2022

("Mitchell Dec.") at ¶ 8.  After the Notices were mailed, Analytics received 3 Notices returned as

undeliverable.  *Id.* at ¶ 9.  Analytics performed address traces for all of the undeliverable Notices,

and re-mailed 2 of them to Class Members for whom new addresses were located.  *Id.*

     The Notices advised Class Members, among other things, of their right to object to or

exclude themselves from the Settlement.  *See id.*; *see also* Dkt. No. 33-2.  No Class Member has

objected to or opted out of the Settlement.  *Id.* at ¶¶ 10-11.

## ARGUMENT

### A.    The Settlement Class Meets the Legal Standards for Class Certification

     On November 15, 2021, this Court conditionally certified the following Classes: (1) all

current and former non-supervisory, non-exempt hourly building service staff members who

worked at The Monarch Condominium during the period from November 10, 2017 through

November 15, 2021; and (2) all individuals who were employed in New York State and worked

as non-supervisory, non-exempt hourly building service staff members at The Monarch

Condominium from November 10, 2014 through November 15, 2021.  *See* Dkt. No. 35.  For the

reasons articulated in the Joint Motion for Preliminary Approval, the Court should now grant final

certification because the Settlement meets all of the requirements of Rule 23 of the Federal Rules

of Civil Procedure, and because "no facts have been presented… to indicate that [the] preliminary

determination [to certify a settlement class] was incorrect."  *Lizondro-Garcia v. Kefi LLC*, 2014

U.S. Dist. LEXIS 143165, *8-9 (S.D.N.Y. Oct. 7, 2014).

### B.    The Settlement is Procedurally and Substantively Fair, Reasonable, and Adequate and Should be Approved in All Respects

     Federal Rule 23(e) requires court approval for a class action settlement to ensure that it is

procedurally and substantively fair, reasonable and adequate.  *See* Fed. R. Civ. P. 23(e).  To

determine procedural fairness, courts examine the negotiating process leading to the settlement. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc*., 396 F.3d 96, 116 (2d Cir. 2005); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001). To determine substantive fairness, courts determine whether the settlement's terms are fair, adequate, and reasonable according to the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000). Courts examine procedural and substantive fairness in light of the "strong judicial policy in favor of settlement" of class action suits. *Wal-Mart Stores*, 396 F.3d at 116 (quoting *In re Paine Webber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998)); *see also Spann v. AOL Time Warner Inc.*, 2005 U.S. Dist. LEXIS 10848, *18 (S.D.N.Y. June 7, 2005) ("public policy favors settlement, especially in the case of class actions"); 4 ALBA CONTE & HERBERT NEWBERG, NEWBERG ON CLASS ACTIONS § 11:41, at 87 (4th ed. 2002) ("[t]he compromise of complex litigation is encouraged by the courts and favored by public policy").

### 1.   <u>The Settlement is Procedurally Fair</u>

The Settlement is procedurally fair because it was reached through arm's-length negotiations and after experienced counsel had thoroughly evaluated the merits of Plaintiff's claims. *See Toure v. Amerigroup Corp.*, 2012 U.S. Dist. LEXIS 110300, *7 (E.D.N.Y. Aug. 6, 2012) (finding settlement to be "procedurally fair, reasonable, adequate, and not a product of collusion" after plaintiffs conducted a thorough investigation and enlisted the services of an experienced employment law mediator); *see also Weston v. TechSol, LLC*, 2018 U.S. Dist. LEXIS 166574, *10-11 (E.D.N.Y. Sept. 26, 2018) (same). Indeed, a "presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores*, 396 F.3d at 116 (citations omitted); *see also In re Metlife Demutualization Litig.*, 689 F. Supp. 2d 297, 330

(E.D.N.Y. Feb. 12, 2010).  "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colleges Holding Corp. Sec. Litig.*, 2007 U.S. Dist. LEXIS 57918, *12 (S.D.N.Y. July 27, 2007); *see also Westerfield v. Washington Mut. Bank*, 2009 U.S. Dist. LEXIS 54553, *4 (E.D.N.Y. June 26, 2009) ("[t]he assistance of an experienced mediator… reinforces that the Settlement Agreement is non-collusive.").

Here, the Parties engaged in sufficient discovery to explore the claims and defenses at issue in the case.  In fact, Class Counsel reviewed hundreds of pages of the Settling Entities' documents and payroll records and, prior to three separate full-day mediations, analyzed and compared the Settling Entities' timekeeping and payroll data, gathered information gleaned from its own investigation, and arrived at estimated damages figures for the Classes.  *See* Gallaway Dec., ¶ 8. Class Counsel also conducted numerous and lengthy confirmatory interviews with Class Members about the claims and defenses at issue in this case and obtained six separate and detailed Class Member declarations.  *Id.*

Plaintiff and the Settling Entities arrived at a settlement after numerous vigorous, arms'-length negotiations conducted before an experienced third-party mediator.  *Id.* at ¶¶ 9-13.  At all times during this process, the arm's-length negotiations involved counsel well-versed in wage and hour class action law.  In the opinion of Class Counsel, the $912,500 Settlement constitutes 53% of Class Members' compensatory damages.  *Id.* at ¶ 15. An outstanding result in light of the complex legal issues in the action and the profound risks and uncertainties of litigating the case to trial and overcoming inevitable appeals.  The Named Plaintiff was contacted by Class Counsel and concurred with this assessment.  *Id.*

For these reasons, the Settlement is procedurally fair.  *See Kochilas v. Nat'l Merch. Servs.*, 2015 U.S. Dist. LEXIS 135553, *9 (E.D.N.Y. Oct. 2, 2015) (holding that the settlement was procedurally fair, reasonable, and adequate where it was "reached after Class Counsel had conducted a thorough investigation and evaluated the claims and after extensive negotiations between the parties"); *see also Yuzary v. HSBC Bank USA, N.A.*, 2013 U.S. Dist. LEXIS 144327, *14 (S.D.N.Y. Oct. 2, 2013) ("[t]hese arm's-length negotiations involved counsel and a mediator well-versed in wage and hour law, raising a presumption that the settlement achieved meets the requirements of due process.").

### 2.   <u>The Settlement is Substantively Fair</u>

In *Grinnell*, the Second Circuit provided the analytical framework for evaluating the substantive fairness of a class action settlement.  *Grinnell*, 495 F.2d at 448.  The *Grinnell* factors guide district courts in making this determination.  They are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.  *Id*. at 463.  "All nine factors need not be satisfied.  Instead, the Court looks at the totality of these factors in light of the specific circumstances involved."  *Bellifemine v. Sanofi-Aventis U.S. LLC*, 2010 U.S. Dist. LEXIS 79679, *7 (S.D.N.Y. Aug. 6, 2010) (citations omitted).  Here, all of the *Grinnell* factors either weigh in favor of final approval of the Settlement or are neutral.

i.      **Litigation Through Trial Would Be Complex,
Costly, And Long (*Grinnell* Factor 1)**

By reaching a favorable settlement prior to dispositive motions or trial, Plaintiff avoided

the significant expense and delay of further litigation, and ensured a risk-free recovery for the

Classes.  *See Capilupi v. People's United Fin., Inc.*, 2018 U.S. Dist. LEXIS 167550, *3-4

(E.D.N.Y. Sept. 27, 2018).  "Most class actions are inherently complex and settlement avoids the

costs, delays and multitude of other problems associated with them."  *In re Austrian & German

Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000) ("*In re Austrian*"); *see also Karic

v. Major Auto. Cos.*, 2016 U.S. Dist. LEXIS 57782, *16 (E.D.N.Y. Apr. 27, 2016) ("class actions,

especially in the context of FLSA claims, are inherently complex").  This case is no exception,

with 35 Class Members and claims asserted under federal and state law.

As an initial matter, at the time the Parties reached the Settlement, the Settling Entities

disputed the viability of Plaintiff's claims and could have argued, *inter alia*, that Plaintiff'' claims

must be submitted to arbitration. Assuming Plaintiff was successful in defeating that motion,

further discovery would be required to establish liability and damages, to support Plaintiff's class

certification motion and to respond to the Settling Entities' opposition to such motion.  This

discovery would include further electronic discovery; depositions of Plaintiff, opt-ins, and the

Settling Entities' employees, including managers who supervised Plaintiff and opt-ins, and the

Settling Entities' corporate representatives; and potential expert analysis of data.  After completing

discovery, Plaintiff and the Settling Entities would likely move for summary judgment.  If the

Court determined that fact disputes precluded summary judgment, a fact-intensive trial would be

necessary.  Any judgment would likely be appealed, further extending the litigation.  This

Settlement, on the other hand, provides significant relief to Class Members in a prompt and

efficient manner.  Therefore, the first *Grinnell* factor weighs in favor of final approval.

ii.     **The Reaction of the Class Has Been Positive (*Grinnell* Factor 2)**

The second *Grinnell* factor "is perhaps the most significant factor to be weighed in considering its adequacy." *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002). The lack of class member objections "may itself be taken as evidencing the fairness of the settlement." *Slomovics v. All for a Dollar, Inc.*, 906 F. Supp. 146, 150 (E.D.N.Y. 1995).

Here, after the Preliminary Approval Order was entered, Class Counsel and counsel for the Settling Entities, along with the Settlement Claims Administrator, began working on finalizing the Notice. *See* Gallaway Dec., ¶ 32. Moreover, as workweek information for a majority of Class Members had not been produced, this information was collected and forwarded to Analytics for analysis and input into its computer database. The Notice was disseminated to Class Members on December 8, 2021. *See* Declaration of Jeffrey Mitchell dated February 24, 2022 ("Mitchell Dec."), ¶ 8; *see also* Gallaway Dec. at ¶ 33. Among other things, the Notice contained relevant information about the nature of the lawsuit, including how the Individual Settlement Amounts would be calculated, attorneys' fees and expenses, the proposed service awards to Named Plaintiff, and how Class Members could exclude themselves from the Settlement or object to the Settlement. *See* Mitchell Dec. at Exhibit 1. The Notice also included information for Class Members who did not wish to participate in the Settlement. *See id.*

To ensure Class Members can evaluate the merits of the Settlement and their projected recoveries, the Class Notice also contained each employee's Individual Settlement Amount based on a hypothetical Net Distribution Amount of $600,000 (that is, after deduction of requested attorneys' fees, expenses and administration costs). *See* Gallaway Dec., ¶ 34. Those figures show compellingly the outstanding nature of the Settlement achieved in this case, out of 35 Class Members, 4 Class Members can expect to receive between $100 and $999 from the Net Settlement Fund; 12 Class Members can expect to receive between $1,000 and $9,999 from the Net Settlement

Fund, and 19 Class Members can expect to receive more than $10,000 from the Net Settlement Fund.  *See* Mitchell Dec., ¶ 12; *see also* Gallaway Dec., ¶¶ 16 & 34. Moreover, the average Class Member can expect to receive $16,752.02. *Id*. These are meaningful sums for employees at The Monarch Condominium, many of whom are low- or medium-income wage earners.  Notably, subsequent to the dissemination of the Notice, Class Counsel has received and responded to nearly 10-20 calls and emails from Class Members who are ecstatic about the Settlement and their anticipated individual recoveries.  *See* Gallaway Dec., ¶ 35.  These calls and emails continue on a daily basis through the filing of this motion.  *Id*.

The date for objecting to the Settlement expired on January 7, 2022.  *See* Mitchell Dec., ¶¶ 10-11.  Not a single Class Member objected to or opted out of the Settlement or Class Counsel's fee request.  *Id*.  "[T]he fact that the vast majority of class members neither objected nor opted out is a strong indication that the proposed settlement is fair, reasonable, and adequate."  *Flores v. Mamma Lombardi's of Holbrook, Inc.*, 104 F. Supp. 3d 290, 302 (E.D.N.Y. 2015); *see also Kochilas*, 2015 U.S. Dist. LEXIS 135553 at *13 (where no class members submitted a timely objection to the settlement or requested exclusion, "[t]his overwhelmingly favorable response recommends final approval"); *Willix v. Healthfirst*, 2011 U.S. Dist. LEXIS 21102, *10 (E.D.N.Y. Feb. 18, 2011) (approving settlement where only 7 of 2,025 class members submitted timely objections and only 2 requested exclusion).

### iii.   Discovery Has Advanced Far Enough to Allow The Parties To Resolve The Case (*Grinnell* Factor 3)

Although preparing this case through trial would require many more hours of discovery, the Parties have completed enough discovery to recommend settlement.  Indeed, this factor looks to whether counsel had an adequate appreciation of the merits of the case before negotiating.  *See In re Austrian*, 80 F. Supp. 2d at 176 ("the pretrial negotiations and discovery must be sufficiently

adversarial that they are not designed to justify a settlement… [but] an aggressive effort to ferret out facts helpful to the prosecution of the suit."); *see also Sewell v. Bovis Lend Lease LMB, Inc.*, 2012 U.S. Dist. LEXIS 53556, *21 (S.D.N.Y. Apr. 20, 2012) ("[t]he Court need not find that the parties have engaged in extensive discovery… it is enough for the parties to have engaged in sufficient investigation of the facts to enable the Court to 'intelligently make… an appraisal' of the Settlement") (quotation omitted).

The Parties' discovery here readily meets this standard.  As discussed, *supra*, Class Counsel received and reviewed hundreds of pages of documents from the Settling Entities.  *See* Gallaway Dec., ¶¶ 8, 10, 39 and 49.  These documents included collective bargaining agreements, personnel files and Class Member time and payroll records.  *Id.*  Class Counsel also spoke with a number of Class Members regarding their work experiences at the Monarch Condominium and the manner in which they were harmed by virtue of the timekeeping policies challenged in the Litigation and obtained four declarations confirming Plaintiff's allegations.  *Id.* at ¶ 8.  Further, Class Counsel engaged in a thorough and detailed analysis of the Settling Entities' payroll records in order to calculate Class Member damages.  *Id.* at ¶¶ 8-10.  Accordingly, the third *Grinnell* factor favors final approval.  *See Capilupi*, 2018 U.S. Dist. LEXIS 167550 at *3-4 (granting final approval where the parties exchanged payroll records and plaintiffs' counsel interviewed class members); *see also Sewell*, 2012 U.S. Dist. LEXIS 53556 at *21 (granting final approval where the parties "exchanged thousands of pages of documents and Plaintiffs' counsel has interviewed numerous class members").

### iv.   Plaintiff Would Face Substantial Risks If The Case Proceeded (*Grinnell* Factors 4 and 5)

Although Plaintiff was confident in his case and believed it to be strong, it is subject to considerable risk.  Undoubtedly, "risks are inherent in litigation."  *Sewell*, 2012 U.S. Dist. LEXIS

53556 at *23.  Indeed, "the primary purpose of settlement is to avoid the uncertainty of a trial on the merits."  *Garcia v. Pancho Villa's of Huntington Vill., Inc.*, 2012 U.S. Dist. LEXIS 144446, *12 (E.D.N.Y. Oct. 4, 2012).  In weighing the risks of establishing liability and damages, the Court "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement."  *Id.* (quoting *Sewell*, 2012 U.S. Dist. LEXIS 53556 at *22).

Here, as discussed, *supra*, Plaintiff faced substantial risks as to both liability and damages if the case proceeded.  While Plaintiff believed he could ultimately overcome the Settling Entities' defenses and subsequently prevail on a motion for class certification, this would require significant factual development.  Plaintiff would have to rebut the merits of the Settling Entities' arguments that Class Members were not actually working during pre- and post-shift periods or while "off-the-clock"; litigate whether the Settling Entities' alleged violations were willful; and rebut the Settling Entities' arguments regarding the proper measure of damages.  In addition to additional discovery, this would require "favorable outcomes at trial and on appeal, both of which are inherently uncertain and lengthy."  *Garcia*, 2012 U.S. Dist. LEXIS 144446 at *12 (quoting *Johnson v. Brennan*, 2011 U.S. Dist. LEXIS 105775, *30 (S.D.N.Y. Sept. 16, 2011)).  Indeed, Class Counsel are experienced and realistic, and understand that the resolution of liability issues, the outcome at trial, and the inevitable appeals process are uncertain in terms of both outcome and duration.  The Settlement alleviates this uncertainty.  These factors, therefore, weigh in favor of final approval.

    v.  **Maintaining The Class Through Trial
Would Be Difficult (*Grinnell* Factor 6)**

In addition to the risks associated with the Settling Entities' defenses, the risk of obtaining class certification and maintaining it through trial is also present.  The Settling Entities would likely contest collective and class certification resulting in extensive discovery and briefing.

Indeed, the Settling Entities repeatedly asserted throughout the discovery process their position that the Plaintiff's proposed class/collective definition is too broad, and that Plaintiff is not similarly situated to and cannot adequately represent all of the 35 Class Members.  If the Court granted class certification and authorized notice to Class Members, the Settling Entities would likely challenge that decision and seek to decertify the collective at a later date, requiring additional briefing and a possible application to the Second Circuit under Federal Rule 23(f).

Additionally, the Settling Entities would likely assert defenses for certain Class Members based on their particular factual circumstances.  Although time-rounding cases such as this one are routinely certified and Plaintiff disagrees with these arguments, other defendants have prevailed on arguments like these.  *See, e.g.*, *Myers v. Hertz Corp.*, 624 F.3d 537, 549-551 (2d Cir. 2010) (affirming denial of class certification based on evidence that the class members' duties varied by location).  As such, there is a legitimate risk that the Court would conclude that such individualized factual inquires precludes class treatment in this case.  Accordingly, this *Grinnell* factor weighs in favor of final approval.

### vi.   The Settling Entities' Ability To Withstand A Greater Judgment Is Not Determinative (*Grinnell* Factor 7)

The Settling Entities had a difficult time agreeing to the Settlement Amount as they apparently did not have sufficient funds to pay the Gross Settlement Amount at once and the parties had to negotiate payment in three tranches over 60/180/300 days from the Preliminary Approval Order. *See* Gallaway Dec., ¶ 21.  However, even if The Settling Entities could withstand a greater judgment, which it appears they could not, their ability to do so, "standing alone, does not suggest that the settlement is unfair." *In re Austrian*, 80 F. Supp. 2d at n. 9.  This factor thus weighs in favor of the Court from granting final approval.

### vii.  The Settlement Fund Is Substantial in Light of the Best Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9)

The Gross Settlement Amount is substantial given the value of the claims and the litigation

risks.  The determination of whether a settlement amount is reasonable "is not susceptible of a

mathematical equation yielding a particularized sum."  *In re Austrian*, 80 F. Supp. 2d at 178.

"Instead, there is a range of reasonableness with respect to a settlement—a range which recognizes

the uncertainties of law and fact in any particular case and the concomitant risks and costs

necessarily inherent in taking any litigation to completion."  *Frank v. Eastman Kodak Co.*, 228

F.R.D. 174, 186 (W.D.N.Y. 2005) (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972));

*see also Ballinger v. Advance Magazine Publrs., Inc.*, 2014 U.S. Dist. LEXIS 179538, *7

(S.D.N.Y. Dec. 29, 2014) ("[t]he inquiry with respect to this factor is to see whether the settlement

falls below the lowest point in the range of reasonableness") (citations omitted).  "There is no

reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a

thousandth part of a single percent of the potential recovery." *Grinnell*, 495 F.2d at n.2; *see also*

*Cagan v. Anchor Sav. Bank FSB*, 1990 U.S. Dist. LEXIS 11450, *34-35 (E.D.N.Y. May 22, 1990)

(approving a $2.3 million class settlement where the "best possible recovery would be

approximately $121 million").  Ultimately, where a settlement provides "a meaningful benefit to

the Class when considered against the obstacles to proving plaintiff's claims with respect to

damages in particular, the agreement is reasonable." *Karic*, 2016 U.S. Dist. LEXIS 57782 at *22

(citing *In re Metlife Demutualization Litig.*, 689 F. Supp. 2d 297, 340 (E.D.N.Y. 2010)).

Here, the Settlement provides far more than "a fraction of the potential recovery." *See*

*Grinnell*, 495 F.2d at 455.  To the contrary, the $912,500 Gross Settlement Amount provides a

substantial, all-cash recovery to compensate Class Members for their damages even after deducting

the attorneys' fees and expenses requested by Class Counsel. By Class Counsel's estimation, the

Gross Settlement Amount represents approximately 22% of Class Members' lost wages at 10-hours per week, *including* liquidated damages, statutory damages and interest.  *See* Gallaway Dec., ¶ 14.  This is an extraordinary result by any measure and even more impressive when compared to 53% recovery of the alleged $1,726,517 in actual compensatory damages sustained by members of the Class.  *Id.* at ¶ 15.  Indeed, 4 Class Members can expect to receive between $100 and $999 from the Net Settlement Fund; 12 Class Members can expect to receive between $1,000 and $9,999 from the Net Settlement Fund, and 19 Class Members can expect to receive more than $10,000 from the Net Settlement Fund.  *See* Mitchell Dec., ¶ 12; *See also* Gallaway Dec., ¶¶ 16 & 34.  Moreover, the average Class Member can expect to receive $16,752.02.  *Id.*  Accordingly, these factors favor final approval of the Settlement.

## C.    The Plan of Allocation is Fair and Reasonable

The plan of allocation is fair, reasonable, and adequate.  "'As a general rule, the adequacy of an allocation plan turns on… whether the proposed apportionment is fair and reasonable' under the particular circumstances of the case."  *In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 518 (E.D.N.Y. 2003) (citation omitted). "An allocation formula need only have a reasonable, rational basis, particularly if recommended by 'experienced and competent' class counsel."  *In re American Banknote Holographics*, 127 F. Supp. 2d 418, 429-30 (S.D.N.Y. 2001) (citation omitted).

Here, under the allocation formula, each Class Member will be assigned an individual percentage amount of the Gross Settlement Amount based on the number of weeks they worked over the period between November 10, 2014 through November 15, 2021, divided by the number of total weeks worked by all class members over the same time period.  *See* Gallaway Dec., ¶ 25. Each Class Member's percentage amount of the Gross Settlement Amount shall be assigned to the Net Settlement Fund and in order to compute that Class Member's share of the Net Settlement

Fund (an "Individual Settlement Amount").  For example, if a Class Member's percentage of the Full Recovery Amount is 5.00%, and the Net Distribution Amount is $600,000.00, then that Class Member's Individual Settlement Amount would be $30,000.00 (subject to the applicable tax withholdings).  *Id.*

The plan of allocation does not treat any Class Member better or worse than any other employee and, instead, is based entirely on objective mathematical calculations derived from time reports and pay records.  *Id.* at ¶ 24.  All Class Members were informed of this plan of allocation in the Class Notice and none objected to it.

**D.**   **Approval of the Settlement of the FLSA Class Members' Claims is Appropriate**

Plaintiff also requests that the Court approve the settlement of the FLSA Class Members' claims.  Specifically, Plaintiff has brought their FLSA claims as a collective action.  Unlike the procedure under Rule 23, collective members must affirmatively opt into the litigation in order to join it.  *See Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 84 (S.D.N.Y. 2001).  Because, under the FLSA, a failure to opt-in "does not prevent [individuals] from bringing their own suits at a later date[,]" FLSA collective actions do not implicate the same due process concerns as Rule 23 actions.  *See Lizondro-Garcia v. Kefi LLC*, 2014 U.S. Dist. LEXIS 143165 at *15-16 (citing *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 476 (S.D.N.Y. 2013) (quoting *McKenna v. Champion Int'l Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984)).  "Accordingly, an FLSA settlement is examined with less scrutiny than a class action settlement; the court simply asks whether the settlement reflects a fair and reasonable compromise of disputed issue that was reached as a result of contested litigation."  *Lizondro-Garcia*, 2014 U.S. Dist. LEXIS 143165 at *16 (citing *Wollinsky v. Scholastic, Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012)).  Here, because the Settlement Agreement resolves a *bona fide* dispute and was reached after vigorous arm's-length negotiations,

it should be approved.  *See Lizondro-Garcia*, 2014 U.S. Dist. LEXIS 143165 at *16 (approving

FLSA settlement which resulted from arms'-length negotiations resolving disputed issues).

**<u>CONCLUSION</u>**

For the reasons stated herein, the Parties jointly request that the Court enter an Order (a)

certifying the Classes for settlement purposes; (b) granting final approval of the Settlement;

(c) entering Judgment in accordance with the Settlement Agreement; and (d) granting such other

and further relief as the Court deems just and proper.

Dated:  New York, New York
        March 9, 2022

McLAUGHLIN & STERN, LLP

By:  */s/ Brett R. Gallaway*
     Brett R. Gallaway
     Lee S. Shalov
     Jason S. Giaimo
     260 Madison Avenue
     New York, New York 10016
     Tel.: (212) 448-1100
     Fax: (212) 448-0066

*Attorneys for Plaintiff*